

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-3-2001

# In Re: Brightful

Precedential or Non-Precedential:

Docket 00-1250

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"In Re: Brightful" (2001). *2001 Decisions.* Paper 226.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/226

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 3, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 00-1250

IN RE: PATRICIA A. BRIGHTFUL

PATRICIA A. BRIGHTFUL

v.

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE
AGENCY; SALLIE MAE TRUST; FIRST UNION BANK

CHRISTINE SHUBERT, ESQ., Chapter 7 Trustee;
FREDERICK BAKER, ESQ., U.S. TRUSTEE,
        Trustees

Pennsylvania Higher Education Assistance
Agency ("PHEAA"),
        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 99-cv-06348)
District Judge: Honorable Marvin Katz

Argued April 17, 2001

Before: ALITO, RENDELL and FUENTES, Circuit Ju dges,

(Filed: October 3, 2001)

Jason L. Swartley, Esq.
Byron F. Walker, Esq. [ARGUED]
Pennsylvania Higher Education
Assistance Agency
1200 North 7th Street
Harrisburg, PA 17102
Counsel for Appellant
 Pennsylvania Higher Education
 Assistance Agency

Henry J. Sommer, Esq. [ARGUED]
Miller, Frank & Miller
21 South 12th Street
640 PSFS Building
Philadelphia, PA 19107
Counsel for Appellee
 Patricia A. Brightful

OPINION OF THE COURT

RENDELL, Circuit Judge.

The Pennsylvania Higher Education Assistance Agency
("PHEAA") appeals the District Court's affirmance of the
Bankruptcy Court's decision to discharge Patricia
Brightful's student loan obligations. The issue presented by
this appeal is whether Brightful's student loans burden her
with an "undue hardship" that would render them
dischargeable pursuant to 11 U.S.C. S 523(a)(8). Applying
the three-pronged test we adopted in In re: Faish, 72 F.3d
298 (3d Cir. 1995), we hold that Brightful's student loans
do not constitute an "undue hardship," and will reverse the
District Court.

I. Facts and Procedural Background

This case arises out of an adversary proceeding filed by
Brightful, seeking a determination that her student loans
are dischargeable under 11 U.S.C. S 523(a)(8) because
repayment of the loans would cause "undue hardship." On
November 8, 1999, after a hearing on the merits, the
Bankruptcy Court ruled that the loans were dischargeable.

2

PHEAA appealed, and the District Court affirmed the Bankruptcy Court's decision on February 28, 2000, based solely upon the Bankruptcy Court's Order and Memorandum. PHEAA now appeals the District Court's order.1

The Bankruptcy Court made the following findings of fact. At the time of the Bankruptcy Court proceedings, Brightful was a 46-year-old single mother of a 14-year-old daughter. Due to their eviction from their former residence on July 19, 1999, Brightful and her daughter reside with Brightful's sister in a crowded three-bedroom home. The Bankruptcy Court characterized Brightful's living situation as "sub-marginal by any standards."

The Bankruptcy Court noted that Brightful has no degree, but has completed the equivalent of two years of college education. Most recently, she attended the New School for Social Research in New York City, but she has also attended the Community College of Philadelphia, Temple University, and Pierce Junior College. During the late 1980's and early 1990's, Brightful was employed full-time as a legal secretary at the Dechert law firm in Philadelphia. Since the early 1990's, she has worked part-time at Dechert. At the time of the hearing, Brightful was paid $18 per hour for her work at Dechert, but was only working nine to 30 hours per month, and estimated that she would earn approximately $8,500 in 1999. During 1998, she earned $20,000 at Dechert. Additionally, the Bankruptcy Court remarked that Brightful had filed sexual discrimination and sexual harassment charges against Dechert in 1998.

The Bankruptcy Court described Brightful as "very intelligent" and "physically healthy." However, the court also determined that Brightful had "glaring psychiatric problems" and that she was "emotionally unstable." The court noted that Brightful had made two suicide attempts, one in the last year. The court concluded that it was

_____

1. We have jurisdiction over this appeal pursuant to 28 U.S.C. S 158(d). The Bankruptcy Court had jurisdiction over the original adversary proceeding pursuant to 28 U.S.C. S 157(b), and the District Court had jurisdiction over the first appeal pursuant to 28 U.S.C. S 158(a).

unlikely that Brightful would ever attain her college degree, and that Brightful lacked useful vocational training. Finally, the court determined that Brightful's pursuit of sexual discrimination charges against Dechert had both scarred her future prospects with that firm and accounted for the sharp reduction in her income in 1999 as compared to 1998.

## II. Standard of Review

The trier of fact in this case was the Bankruptcy Court, not the District Court. Therefore "[w]e are in as good a position as the district court to review the findings of the bankruptcy court, so we review the bankruptcy court's findings by the standards the district court should employ, to determine whether the district court erred in its review." Fegeley v. United States, 118 F.3d 979, 982 (3d Cir. 1997) (quoting Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir. 1981)). We must accept the Bankruptcy Court's findings of fact unless they are clearly erroneous, but we exercise plenary review over legal issues. Id. We therefore exercise plenary review over the Bankruptcy Court's application of our three-pronged Faish test to the facts of this case. See Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2d Cir. 1987) (noting that whether debtor suffers "undue hardship" under 11 U.S.C. S 523(a)(8) is a conclusion regarding the legal effect of the bankruptcy court's factual findings).

## III. Discussion

The Bankruptcy Code provision at issue provides that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -- . . .

>  (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such

4

    debt from discharge under this paragraph will impose
    an undue hardship on the debtor and the debtor's
    dependents;

11 U.S.C. S 523(a)(8) (emphasis added).

In In re: Faish, 72 F.3d 298 (3d Cir. 1995), we analyzed
this statutory section in detail.[2] We noted the difficulty in
applying the "undue hardship" exception of 11 U.S.C.
S 523(a)(8), because the drafters of the Bankruptcy Code
did not define "undue hardship." Id. at 302. As a result, we
had to look to the legislative purpose behind 11 U.S.C.
S 523(a)(8) for guidance. Ultimately, we adopted the Second
Circuit's three-pronged test for determining "undue
hardship," found in Brunner v. New York State Higher
Education Services Corp., 831 F.2d 395 (2d Cir. 1987),
because the Brunner test was the "most logical and
workable of the established tests" for assessing"undue
hardship." Faish, 72 F.3d at 306.

Under this test, "undue hardship" requires a three-part
showing: (1) that the debtor cannot maintain, based on
current income and expenses, a minimal standard of living
for herself and her dependents if forced to repay the loans;
(2) that additional circumstances exist indicating that this
state of affairs is likely to persist for a significant portion of
the repayment period for student loans; and (3) that the
debtor has made good faith efforts to repay the loans. Id. at
304-05. The debtor has the burden of establishing each
element of this test by a preponderance of the evidence. Id.
at 306; see also Grogan v. Garner, 498 U.S. 279, 291 (1991)
(holding that "the standard of proof for the dischargeability
exceptions in 11 U.S.C. S 523(a) is the ordinary
preponderance-of-the-evidence standard"). If one of the
elements of the test is not proven, the inquiry must end
there, and the student loans cannot be discharged. Faish,
72 F.3d at 306. Moreover, this test must be strictly
construed: equitable concerns or other extraneous factors

_____

2. At the time that Faish was decided, the "undue hardship" exception
appeared in 11 U.S.C. S 523(a)(8)(B). In 1998, Congress amended the
statute by incorporating this exception into 11 U.S.C. S 523(a)(8). This
change is irrelevant to our analysis, however, because the language of
the two versions is exactly the same.

not contemplated by the test may not be imported into the analysis of "under hardship." Id.

Applying this test to Brightful's situation, we must first determine whether she has met her burden of demonstrating that she cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependent daughter if forced to repay the loans. We note that this inquiry is made difficult by the fact that the Bankruptcy Court made no factual findings regarding Brightful's expenses. Brightful did submit some information and testified briefly regarding her expenses, but PHEAA contends that much of this information is inaccurate, incomplete and undocumented.

For its part, the Bankruptcy Court appeared merely to assume that Brightful could not maintain a "minimal" standard of living because her 1999 income, which the court estimated at $8,500, was so low. While this might be a reasonable assumption, it is also true that Brightful earned significantly more money in 1998 ($20,000), is not on public assistance, and apparently has no significant housing expenses because she is living in her sister's home. Furthermore, in its November 8, 1999 order, the Bankruptcy Court did not even mention the amount of Brightful's loan payments. Our own examination of the record, however, reveals that as of October 20, 1999, Brightful's student loan indebtedness totaled $52,261.70 in principal and interest, which corresponds to a loan payment of $626 per month over the ten year life of the loans.3

Despite the dearth of information regarding Brightful's expenses, we nonetheless will assume, for the sake of argument, that at the time of the Bankruptcy Court proceedings, Brightful could not make her student loan payments and still maintain a minimal standard of living for herself and her daughter. As detailed below, we think it clear that Brightful has failed to meet her burden under the second prong of the Faish test, and thus we will not
_____

3. PHEAA points out, however, that Brightful is eligible to consolidate her
student loans for a period of twenty-five years, which apparently would reduce her monthly payments to $355.57.

6

concern ourselves with the deficient state of the record regarding the first prong.

Under the second element of the test, Brightful must prove that additional circumstances exist indicating that she cannot maintain a minimal standard of living for a significant portion of the repayment period if forced to repay her loans. This is a demanding requirement. As we indicated in Faish, it is not enough for Brightful to demonstrate that she is currently in financial straits; rather, she must prove "a total incapacity . . . in the future to pay [her] debts for reasons not within[her] control." Id. at 307 (quoting In re: Brunner, 46 B.R. 752, 758 (S.D.N.Y. 1985)). In other words, "dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." Brunner, 46 B.R. at 755 (quoting In re: Briscoe, 16 B.R. 128, 131 (Bankr. S.D.N.Y. 1981)); see also In re: Ballard, 60 B.R. 673, 675 (Bankr. W.D. Va. 1986) (explaining that "[a] finding of undue hardship is reserved for the exceptional case and requires the presence of unique or extraordinary circumstances which would render it unlikely that the debtor ever would be able to honor his obligations").

As noted earlier, the Bankruptcy Court concluded that Brightful most likely would never attain her college degree, lacks useful vocational training, suffers glaring psychiatric problems, is emotionally unstable, and that her pursuit of sexual discrimination charges against Dechert had both scarred her future prospects with that firm and accounted for the sharp reduction in her income in 1999 as compared to 1998. On the basis of these factual findings, the court believed that there was a "substantial likelihood that [Brightful's] sub-marginal economic circumstances will persist for many years, probably for the rest of her life," and that therefore she had satisfied the second prong of the Faish test.

At the outset, we think the Bankruptcy Court's finding that Brightful lacks useful vocational training is clearly erroneous. It is undisputed that Brightful has worked for over a decade in both a full-time and part-time capacity as a legal secretary at Dechert. As part of this employment, she is trained to operate office equipment and computer

7

software. Brightful has never suggested that she lacked the skills to perform the duties of a legal secretary-- indeed, such a suggestion would contradict the fact that she currently holds that position, albeit in a part-time capacity. Thus, we reject the Bankruptcy Court's unsupported conclusion that Brightful lacks useful vocational training.

Similarly, we reject the Bankruptcy Court's conclusions that Brightful's pursuit of sexual discrimination charges against Dechert had both scarred her future prospects with that firm and accounted for the sharp reduction in her income in 1999 as compared to 1998. During the Bankruptcy Court proceedings, neither the circumstances surrounding Brightful's sexual discrimination charges nor the consequences flowing from these charges were adequately explored. Rather, as the Bankruptcy Court noted in the beginning of its opinion, the circumstances surrounding the charges were "unexplained." There is simply no basis in the record for the Bankruptcy Court's conclusion that Brightful was the victim of retaliation for bringing charges against Dechert. Indeed, such a conclusion would seem to be contradicted by Brightful's continued employment at Dechert a higher rate of pay ($18 per hour) than she received prior to filing her charges. In any event, the Bankruptcy Court's conclusions on this matter were purely speculative, and accordingly, we reject them.4

_____

4. Furthermore, even were we to accept the Bankruptcy Court's conclusions, they would not support a finding of"additional circumstances" indicating that Brightful cannot maintain a minimal standard of living for a significant portion of her loan repayment period. If Brightful's employment prospects at Dechert were foreclosed, it would be her responsibility to diligently pursue employment elsewhere -- something that the record indicates she has not done, as evidenced by her failure to have a current resume and her inability to recall the names of temporary employment agencies that she allegedly contacted in the past. See, e.g., In re: Greco, 251 B.R. 670, 677 (Bankr. E.D. Pa. 2000) (holding that the debtor had failed to meet her burden under the second prong of Faish because "[t]he testimony offered by the Debtor at trial does not reveal a diligent effort on her part to secure a stable, salaried job," and "the Debtor has not demonstrated any efforts to seek employment in another field").

8

The Bankruptcy Court gave great weight to Brightful's alleged emotional and psychiatric infirmities, concluding from Brightful's testimony that she was emotionally unstable and that she had "glaring" psychiatric problems. We think these findings have some support in the record, especially considering that Brightful has apparently attempted suicide twice in her life. PHEAA argues, however, that such findings require expert testimony, and cannot be made simply on the basis of the debtor's testimony. We disagree. It was appropriate for the Bankruptcy Court, as the trier of fact, to assess Brightful's testimony and draw reasonable conclusions regarding her mental and emotional state. E.g., In re: Cline, 248 B.R. 347, 350 (B.A.P. 8th Cir. 2000) (explaining that "[t]here is no reason to view the trial court's findings [regarding the debtor's emotional state] as unreliable merely because no expert evidence was introduced").

What is missing from the Bankruptcy Court's analysis, however, is any discussion of the nature of Brightful's emotional and psychiatric problems, or how these problems prevent her from being gainfully employed. The Bankruptcy Court seems to have merely assumed that Brightful's emotional and psychiatric problems would automatically preclude her from holding full-time employment. Yet Brightful's testimony, while perhaps supporting the general conclusion that she has emotional and psychiatric problems, is notable for its lack of detail. It contains no explanation of the precise nature of her problems, and no explanation of how her condition would impair her ability to work as a legal secretary. Nor does she claim that her problems have greatly intensified in 1999, and are therefore responsible for the sharp reduction in her hours in 1999 as compared to 1998. Rather, it is clear from her testimony that her mental and emotional difficulties have existed throughout her adult life.

Without any further explanation of Brightful's mental and emotional condition (or at least some indication that this condition will deteriorate in the future), there is simply no record basis for the conclusion that Brightful's emotional and psychiatric problems constitute the sort of"additional circumstances" contemplated by Faish's second prong.

While we do not belittle Brightful's problems, nevertheless Brightful has the burden of demonstrating how these problems impair her ability to work. In our view, she has not even attempted to meet this burden. At the very least, such an attempt would include an explanation as to how she was able to work full-time as a legal secretary in the past (and indeed was able to work a significant number of hours in 1998), and yet cannot do so in the future. E.g., In re: Wardlow, 167 B.R. 148, 152 (Bankr. W.D. Mo. 1993) (holding that the debtor had failed to satisfy the second prong of the Brunner test because the debtor"offered no proof of the severity of [her] medical condition. [She] is sufficiently healthy to perform her job, and offered no indication she would be unable to perform in the future.").

In sum, Brightful has failed to demonstrate the type of exceptional circumstances that are necessary in order to meet her burden under the second prong of Faish . She is intelligent, physically healthy, currently employed, possesses useful skills as a legal secretary, and has no extraordinary, non-discretionary expenses. While she does have one dependent, her daughter is now only two years from the age of majority, and therefore this legal dependency is nearly at end. Thus we readily conclude that Brightful has failed to satisfy her burden. E.g. , In re: Roberson, 999 F.2d 1132, 1137 (7th Cir. 1993) (explaining that the second prong of the test requires a showing of "the type of barrier that would lead us to believe [the debtor] will lack the ability to repay for several years," such as psychiatric problems preventing work, lack of usable job skills and severely limited education, or the necessity of fully supporting several dependents); Brunner , 831 F.2d at 396-97 (holding that the debtor had failed to carry her burden under the second prong because, inter alia, "[s]he is not disabled, nor elderly," and "[n]o evidence was presented indicating a total foreclosure of job prospects in her area of training"); Brunner, 46 B.R. at 755 (noting that circumstances that would satisfy the second prong"have been found most frequently as a result of illness . . . a lack of usable job skills . . . the existence of a large number of dependents . . . or a combination of these"). Because Brightful has failed to meet her burden under the second prong of the Faish test, we hold that her student loans are

10

not dischargeable, and there is no need for us to address the third prong of the test. Faish, 72 F.3d at 306.

We realize that our result in this case might appear harsh, especially given the fact that Brightful does not have her college degree and is unlikely ever to attain it, as the Bankruptcy Court found. Therefore, unlike many student loan debtors, she cannot anticipate significantly increased earnings in the future that would flow from her educational investment. Instead, she must for the foreseeable future rely upon her existing legal secretarial skills to fund her expenses and educational debt. This situation is unfortunate, but it does not excuse Brightful from meeting her student loan obligations. As we observed in Faish:

> [F]ederal student loan programs were not designed to turn the government into an insurer of educational value. Students who benefit from guaranteed loan programs normally would not be eligible to receive any financing or only financing at a higher rate of interest. Since the decision of whether or not to borrow for a college education lies with the individual, it is the student, not the taxpayers, that must accept the consequences of the decision to borrow.

Id. at 305 (internal quotations marks and citations omitted).

In other words, when a student loan borrower accepts money from the government, she strikes a bargain. And "[l]ike all bargains, it entails risk. It is for each student individually to decide whether the risks of future hardship outweigh the potential benefits of a deferred-payment education." Brunner, 46 B.R. at 756. Here, Brightful struck her bargain, she took her risk, and unfortunately, things did not work out as planned. Brightful's hardship is real, but under the Faish test, it is not "undue," and therefore we cannot discharge her obligation to repay her student loans.

In light of the foregoing, we will REVERSE the February 28, 2000 order of the District Court.

11

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit