**In re Dan F. FISH, Debtor.**

**Dan F. Fish, Plaintiff,**

v.

**Sallie Mae, Inc., California Student Aid Commission, Edfund, Educational Credit Management Corporation, Defendants.**

**Bankruptcy No. 02–22596 BM.**
**Adversary No. 02–2279 BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 17, 2003.

John P. Vetica, Jr., Esq., Moon Township, PA, for Plaintiff.

John P. Neblett, Esq., Harrisburg, PA, for Defendants.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

On July 11, 2002, debtor Dan F. Fish filed an adversary complaint to determine the dischargeability of student loan obligations due and owing Sallie Mae, Inc., California Student Aid Commission, ED-FUND, and Educational Credit Management Corporation (ECMC). That complaint was amended on September 26, 2002. Thereafter, an answer listing affirmative defenses to the amended complaint was filed by ECMC.

Debtor avers that his student loan debt is dischargeable under the "undue hardship" exception of § 523(a)(8). ECMC asserts that the debt is not dischargeable as debtor failed to satisfy the requirements for application of the "undue hardship" exception pursuant to controlling case law in this circuit.

The "undue hardship" exception under § 523(a)(8) does not apply in the instant matter and the debt will not be discharged for the reasons set forth below. Judgment accordingly will be entered in favor of defendants and against debtor.

## — FACTS —

Between January, 1995 and November, 1996, plaintiff in this adversary proceeding executed four promissory notes for federal PLUS loans for the benefit of his son, Jeremy. As of the date of Mr. Fish's chapter 7 filing on March 8, 2002, the student loans were serviced by Sallie Mae, Inc. Subsequently, the loans were assigned to EDFUND and/or the California Student Aid Commission, which in turn assigned the accounts to the Educational Credit Management Corporation (ECMC).

Debtor's 2002 tax return, which he filed jointly with his spouse, indicated receipt of adjusted gross income in the amount of $80,997.00. That sum represents the wages of the non-debtor spouse in the amount of $52,862.00 and $25,406.00 as a result of disbursements from debtor's IRA and 401k. The home in which debtor and his spouse reside is titled solely in the name of the non-debtor spouse and is valued at or near $119,000.00, with approximately $100,000.00 in equity.

At trial, debtor submitted a spreadsheet representing his monthly income and expenses from August, 2002, to July, 2003. The most relevant expenses reflected therein were a $200.00 expense for a Christmas gift for debtor's son, a $450.00 monthly expense titled "estimated food expenses," as well as a $170.00 monthly payment towards a student loan for which debtor's son is solely liable.

During his testimony, debtor presented as well-educated, intelligent, and capable. He holds a Bachelors of Science in Business Administration and has extensive experience in recruiting, human resources, and business administration. During the previous decade, debtor was employed in executive positions at various companies.

## — DISCUSSION —

The Code provision relevant to the matter at hand appears at 11 U.S.C. § 523(a)(8) and reads as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt-

. . .

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non profit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, *unless excepting such debt from discharge under this paragraph will impose undue hardship on the debtor and the debtor's dependents.* [emphasis supplied]

11 U.S.C. § 523(a)(8).

 The legal standard for determining whether a debtor wishing to discharge student loan obligations would face "undue hardship" if forced to repay those loans was laid down in *In re Faish.*[1] 72 F.3d 298 (3rd Cir.1995). *Faish* adopted the following three pronged test applicable to the "undue hardship" exception as set forth in *Brunner v. New York State Higher Education Services Corp.:*

---

1. At the time *Faish* was decided, the "undue hardship" exception appeared in 11 U.S.C § 523(a)(8)(B). Congress amended the statute in 1998 and incorporated the exception into subsection (8), thereby eliminating subsection (B). The Third Circuit Court of Appeals noted in the 2001 case of *Brightful v. Pennsylvania Higher Education Assistance Agency,* that the change does not affect the application of the three part "undue hardship" test laid out in *Faish* because the language of the two version was not changed in any manner. *Brightful,* 267 F.3d 324 at 327 (3rd Cir.2001).

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

*In re Faish,* 72 F.3d 298, 304–05 (citing *Brunner,* 831 F.2d 395, 396 (2nd Cir. 1987)).

■ Student loan debtors carry the burden of satisfying each element of the *Brunner* test by a preponderance of the evidence. *Brightful v. Pennsylvania Higher Education Assistance Agency,* 267 F.3d 324, 327 (3rd Cir.2001)(citing *Faish,* 72 F.3d at 306; *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(The Supreme Court in *Grogan* stated "the standard of proof for the dischargeability exception in 11 U.S.C. § 523(a) is the ordinary preponderance of the evidence standard.")). Each element must be met "individually before a discharge can be granted." *Faish,* 72 F.3d at 306. As a result, if a debtor fails to carry his or her burden as to one prong of the test, then the court must not allow a discharge regardless of its finding as to the other prongs. *Id.* (citing *In re Roberson,* 999 F.2d 1132, at 1135 (7th Cir.1993)). Further, "[e]quitable concerns or other extraneous factors not encompassed by the test should not be considered." *Faish,* 72 F.3d at 306. Having laid out the basic framework through which the facts of this case must be examined, we next consider each prong of the *Brunner* test ad seriatim.

■ Turning to the first prong of the *Brunner* test, debtor must establish that he will not be able to "maintain, based on current income and expenses, a 'minimal' standard of living" if forced to repay the student loans. *Faish,* 72 F.3d at 304–305 (citing *Brunner,* 831 F.2d at 396). As a preliminary matter, it should be noted that the income of debtor's spouse will be considered in determining whether debtor can maintain a minimal standard of living. *See In re Mitchell,* 210 B.R. 105, 108 (Bankr. N.D.Ohio 1996) ("courts have routinely considered the income of debtor's spouse when determining whether debtor's household income and expenses are in such a dire condition that a discharge of student loans is warranted").

According to debtor's 2002 tax return, which he filed jointly with his spouse, the household's adjusted gross income was $80,997.00. That figure represents wages of debtor's spouse in the amount of $52,862.00, as well as $25,406.00 of debtor's income from disbursements of his IRA and 401k. Further, debtor resides with his spouse in a home solely owned by the spouse which is valued at or near $119,000.00, with approximately $100,000.00 in equity. Clearly, the household's circumstance does not indicate an inability on debtor's part to maintain a *minimal* standard of living.

Debtor testified at trial as to his spouse changing jobs, which resulted in her yearly income being decreased by approximately $20,000.00. Debtor further testified that the balance of his IRA account was depleted as a result of his withdrawals to a sum of approximately $7,000. Such modification of the household's combined income does not necessarily implicate a finding of undue hardship as undue hardship has not been found in cases where debtor's annual household income was far less than that reported by Mr. Fish. For example, in *Brightful v. Pennsylvania Higher Education Assistance Agency,* debtor request-

ed discharge of her student loans pursuant to the "undue hardship" exception wherein debtor's estimated yearly income was $8,500. 267 F.3d 324, 326. In that case, the court was steadfast in denying application of the exception, even after considering debtor's meager income. *Id.* Further, the *Brunner* court denied application of the undue hardship exception where the student loan debtor's "greatest annual income was $9,000" in the decade preceding debtor's bankruptcy filing. *In re Brunner*, 46 B.R. 752, 756 (S.D.N.Y.1985); *aff'd* at 831 F.2d 395 (2nd Cir.1987).

■ Moreover, the analysis does not turn on income alone, we must also examine the household's expenses. The aforementioned spreadsheet of debtor's income and expenses reflected a November, 2002, expense in the amount of $200.00 labeled "Jeremy Xmas" [sic], which represented a Christmas gift for debtor's son, Jeremy. Delving deeper into debtor's expenses reveals a $200.00 increase in the line labeled "estimated food expense" beginning in July, 2003, which increased the total expense to $450.00 per month. Debtor testified that he had voluntarily assumed a larger share of the cost of groceries for the household, which includes two adult and employed children of the non-debtor spouse neither of whom contribute to the grocery expenses. Moreover, debtor has been paying approximately $170.00 every month as payment for his son Jeremy's student loan for which debtor is not legally obligated, while failing to pay the student loan at issue in the instant matter for which debtor is legally obligated to pay.

Although debtor's income may be considered somewhat modest, his expenses contain excess "fat" which, if trimmed, would enable him to pay the student loan for which he is obligated, while still main-

taining a minimal standard of living. "The fact that a debtor's budget may be tight for the foreseeable future is the norm rather than the exception." In re: *Bakkum v. Great Lakes Higher Education Corp.*, 139 B.R. 680, 682 (Bankr.N.D.Ohio 1992). Namely, if debtor would refuse to pay the student loan for which his son is solely liable, then debtor would be able to pay at least $170.00 per month towards the student loan he has failed to pay and for which he is legally obligated. Upon review of the expenses and income of debtor's household, debtor has failed to prove by a preponderance of the evidence that if forced to repay the student loans, he would be unable to maintain a minimal standard of living.

This court is not unsympathetic to debtor's sense of moral responsibility for payment of his son's education. However, debtor cannot ignore his responsibility in terms of student loan debt for which he is personally obligated in an effort to further his sense of ethical duty as a parent. Essentially, debtor has forgone payment of a debt that he *must* pay, to ensure payments towards a debt he *may* or may not pay. We stress the impropriety of debtor's conduct in that manner. This adversary proceeding would have been wholly unnecessary had debtor simply transferred the payments we had voluntarily assumed on his son's debt towards his own student loans.

■ The second prong of the *Brunner* test requires that debtor prove by a preponderance of the evidence that "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for the student loans." [2] *Faish*, 72 F.3d at 304–305 (citing *Brunner*, 831 F.2d at 396). The phrase "this state of affairs" refers to

---

**2.** As noted by the Second Circuit in *Brunner*, "[r]equiring evidence not only of current ina-

bility to pay but also of additional, exceptional circumstances, strongly suggestive of continu-

a debtor's inability to maintain a minimal standard of living as addressed by the first prong. In the present matter, debtor failed to prove such inability so it would be impossible for him to satisfy the second prong. However, assuming *arguendo,* debtor could establish an inability to maintain a minimal standard of living, his request for discharge would still fail under the application of the second prong of the *Brunner* test.

■ Specifically, debtor cannot establish that his household's current financial condition will likely persist for a significant portion of the repayment period. This is a stringent requirement and proof of current financial difficulty is wholly inadequate, rather debtor must prove "a total incapacity . . . in the future to pay [his] debts for reasons not within [his] control." *Faish,* 72 F.3d at 307 (quoting *Brunner,* 46 B.R. at 758).

Debtor is a college graduate with a Bachelors of Science in Business Administration and his testimony at trial revealed extensive experience in both human resources and business administration. Throughout debtor's career, he has worked as a technical recruiter, vice president of human resources, and finally, in his most recent employment as president of M.D. Telecom. Debtor testified that he has sent out over one hundred resumes; all to no avail.

While debtor has likely faced many obstacles in his search for employment, he has a unique and valuable perspective on how one goes about obtaining employment because of his expertise in recruiting and human resources. Moreover, debtor has presented no evidence indicating a total or even partial foreclosure of openings in his field of training. See *Brunner,* 831 F.2d at 396–97. Debtor, a gentleman in his

early sixties, believes his trouble finding employment is a result of his age. However, he has been employed for at least the last decade in senior executive positions where one would assume a more advanced age is not out of the ordinary. Although debtor's circumstance is unfortunate, he has not shown by a preponderance of the evidence that this circumstance is likely to persist for a significant portion of the loan repayment period. As such, debtor fails to satisfy the second prong of the Brunner test, even assuming *arguendo* that he could satisfy the first prong.

■ Turning to the third and final prong of the *Brunner* test, debtor must prove by a preponderance of the evidence that he "has made good faith efforts to repay the loans." *Faish,* 72 F.3d at 304–05 (citing *Brunner,* 831 F.2d at 396). The evidence presented by debtor in terms of the good faith requirement falls far below the legal standard required for discharge. Debtor chose to abruptly quit making payments on his loan rather than contacting his loan provider[s] in an effort to negotiate a lower monthly payment for the loan and/or extend its term. Further, debtor failed to pay the student loan at issue in the present matter, while continuing to faithfully pay his son Jeremy's student loan for which debtor is not legally obligated. Such conduct in no way reflects a good faith effort to pay the student loan for which debtor *is* legally obligated. As discussed in *Faish* "the 'undue hardship' exception encompasses a notion that the debtor may not willfully or negligently cause his own default." *Faish,* 72 F.3d at 305 (*quoting* Comm'n on the Bankruptcy Laws of the United States, Report [H.R. Doc. No. 137, 93d Congress, 1st Session., Pt. II] at 140 n. 16).

In sum, to receive a discharge under the "undue hardship" exception, a debtor must

---

ing inability to repay over an extended period of time, more reliably guarantees that the

hardship presented is 'undue.' " *Brunner,* 831 F.2d at 396.

satisfy all three prongs of the *Brunner* test by a preponderance of the evidence. In the present matter, debtor failed to satisfy even one prong of the *Brunner* test, thus a discharge must be denied. Essentially, debtor's household's income, as well as his refusal to pay the loan for which he is liable, while voluntarily assuming payment for his son's student loans has precluded application of the "undue hardship" exception.

### ORDER OF COURT

AND NOW, for the reasons set forth in the above memorandum opinion, it is hereby **ORDERED, ADJUDGED** and **DECREED** that debtor's request for discharge of certain student loans pursuant to the "undue hardship" exception of § 523(a)(8) is **DENIED**. Judgment is entered in favor of defendants Sallie Mae, Inc., California Student Aid Commission, EDFUND, and Educational Credit Management Corporation, and against debtor Dan F. Fish.

It is so **ORDERED**