In re Ann L. FLICKINGER–
LUTHER, Debtor.

Ann L. Flickinger–Luther, Plaintiff,

v.

ECMC, Defendant.

Bankruptcy No. 10–28663–JAD.
Adversary No. 11–2137JAD.

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 4, 2012.

James J. Gillespie, Jr., Pittsburgh, PA, for Plaintiff.

John P. Neblett, Reager and Adler, PC, Camp Hill, PA, for Defendant.

## MEMORANDUM OPINION

JEFFERY A. DELLER, Bankruptcy Judge.

The matter before the Court is an amended complaint to determine dischargeability of student loan debt filed by Ann L. Flickinger–Luther (the "Debtor"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The matter is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A),(I) and (O). This *Memorandum Opinion* constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052. For the reasons set forth below, judgment will be entered in favor of defendant ECMC and against the Debtor, and the Debtor's student loan debt will be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(8).

### I.

The facts of this case are generally not in dispute. The majority of the student loan debt in question was incurred while the Debtor attended various post-secondary programs from 1986 through 1994.[1] As a result of her endeavors during this period, the Debtor obtained an associates degree in apparel technology from Clarissa School of Fashion Design and a bachelor's degree in studio arts from the University of Pittsburgh. (*See* Audio Recording of Hearing Held in Courtroom D, October 26, 2011, (11:07–11:09 AM)).

---

1. The parties do not dispute that the debt at issue constitutes educational loan debt as de-scribed under 11 U.S.C. § 523(a)(8).

Following her degree programs, the Debtor incurred additional student loan debt while attending certain computer courses at the Westmoreland County Community College. (*See id.* at (11:25–11:26 AM)). The Debtor ultimately consolidated her educational loan debt into two separate loans on November 23, 2004. (*See* Doc. # 20, "Exhibit D1"). Both prior to and following the 2004 consolidation, the Debtor fairly consistently made payments on her student loan obligations in varying amounts.[2] (*See* Doc. # 21, "Exhibit 2").

Once completing her education, the Debtor was fairly consistently employed in a variety of jobs which compensated her at rates ranging from $7.50 to $22.00 per hour. (*See Joint Stipulated Facts,* submitted at hearing held October 26, 2011, ¶ 40). The Debtor testified that in her most recent position she earned a salary between thirty and thirty-two thousand dollars per year. (*See* Audio Recording of Hearing Held in Courtroom D, October 26, 2011, (11:10–11:11 AM)). In 2009, the Debtor's position at her most recent job was terminated and the Debtor began receiving unemployment compensation in November of that year. (Doc. # 20, "Exhibit D4"). The Debtor subsequently filed her petition for relief under chapter 7 of the Bankruptcy Code on December 7, 2010. The Debtor then timely initiated the instant adversary proceeding on March 2, 2011. The parties stipulate that at the time of filing, the principal balance of the Debtor's student loans was approximately $67,645.03. (*See Joint Stipulated Facts,* ¶ 5).

At the time the Debtor filed her petition she was collecting unemployment compensation in the amount of $1,871.00 per month. (*See* Doc. # 21, "Exhibit 7", Schedule I). The Debtor testified that since that time her income has decreased dramatically because her unemployment compensation ceased on or around August of 2011. (*See* Audio Recording of Hearing Held in Courtroom D, October 26, 2011, (11:11–11:12 AM)). The Debtor also testified that at the time of the hearing her monthly income was zero and that she was dependant on her elderly parents for support. (*See id.* at (11:20–11:21 AM)). The Debtor also submitted evidence that she has applied for several jobs but has yet to find employment. (*See* Doc. # 21, "Exhibit 9", "Exhibit 10").

This Court conducted a trial on the dischargeability action on October 26, 2011. (Doc. # 26). The only witness at the trial was the Debtor, who the Court found to be both candid and credible. Following the trial, the Court took the matter under advisement.

## II.

Section 528(a)(8) of the Bankruptcy Code does not permit an individual debtor to be discharged from any debt for educational loans "unless excepting such debt from discharge ... would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8).

The United States Court of Appeals for the Third Circuit has adopted the test for "undue hardship" outlined in *Brunner v. New York Higher Education Services Corp.,* 831 F.2d 395 (2d Cir.1987). *Pennsylvania Higher Education Assistance Agency v. Faish,* 72 F.3d 298, 306 (3d Cir.1995) *cert. denied,* 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996).

 Under the *Brunner* test, student loan debt is not dischargeable unless the debtor can establish that: "(1) based on

---

2. Despite this history it appears that because of the Debtor's varying payment amounts, interest that had accumulated on her loans was capitalized to the principal balance. (*See* Doc. # 21, "Exhibit 2").

current income and expenses, debtor cannot maintain a minimal standard of living for herself and her dependents if she has to repay the loan; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the loan repayment period; and (3) debtor has made a good faith effort to repay the loan." *Shilling v. Sallie Mae Servicing Corp. (In re Shilling)*, 333 B.R. 716, 721 (Bankr.W.D.Pa.2005) (citing *Faish*, 72 F.3d at 304–05). The Debtor bears the burden of proof with regard to each prong of this test by a preponderance of the evidence. *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 327 (3d Cir.2001) (citing *Faish*, 72 F.3d at 306; *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

 Each of the three prongs must be satisfied individually before a discharge of the obligation can be granted. *Faish*, 72 F.3d at 306. Thus, if any one prong is not satisfied, that will end the Court's inquiry without the entry of a discharge. *Id.* The Third Circuit has instructed that while considering each prong the Court may not consider any extraneous factors outside of the *Brunner* framework, including equitable concerns. *Id.* (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988)). This Court will consider each prong of the *Brunner* test seriatim.

### A.

 The first prong of the *Brunner* test requires the Debtor to demonstrate that she could not afford to "maintain a minimal standard of living" if forced to repay her student loans. *Id.* This prong requires "more than a showing of tight finances" and will not be satisfied if the debtor could pay the loan by engaging in some "short-term, belt tightening . . . ." *Id.*

Nevertheless, this standard does not require that a debtor must be forced to live in poverty. *See Alston v. United States Dep't of Educ. (In re Alston)*, 297 B.R. 410, 415 (Bankr.E.D.Pa.2003) (citing cases). From the facts presented, it is clear that the Debtor's current standard of living is "minimal" and that a little "belt tightening" would not enable her to pay her student loan obligations.

The Debtor is currently unemployed and her monthly income is zero. (*See* Audio Record of Hearing Held in Courtroom D, October 26, 2011, (11:11–11:12 AM)). The Debtor does not presently receive any form of government assistance. (*See id.*). The Debtor lives with her elderly parents who provide her with food and assistance with certain other expenses. (*See id.* at (11:12–11:13 AM)). While her parents are able to provide her with basic necessities, the Debtor testified that her only source of liquid funds was occasionally doing odd jobs for other people. (*See id.* at (11:12–11:13 AM)). The Debtor testified that to date she has only netted approximately $50–$60 in income as a result of these efforts. (*See id.* at (11:20–11:22 AM)).

The Debtor also testified that she does not have any savings, does not own any real property, does not have any pension fund or retirement savings accounts, and only maintains personal articles of nominal value. (*See id.* at (11:11–11:13 AM)). The Debtor does own a ten-year-old used vehicle, but testified that she rarely drives as she cannot afford gas. (*See id.* at (11:20–11:21 AM)).

Following the Debtor's description of her income, counsel for the Defendant essentially conceded that with no income the Debtor cannot maintain a minimal standard of living. (*See id.* at (11:56–11:57 AM)). As the Debtor is entirely dependent on others to sustain her basic needs and presently is without any "disposable

income" to pay toward her student loan obligations, this Court can easily conclude that she could not maintain a "minimal standard of living" if forced to repay her student loans. Therefore, the Debtor has satisfied the first prong of the *Brunner* test.

### B.

Under the second prong of the *Brunner* test, the Debtor must prove that her inability to maintain a minimal standard of living if forced to repay her student loans is a state of affairs that "is likely to persist for a significant portion of the loan repayment period." *Faish,* 72 F.3d at 305. The Third Circuit has described the second prong as a "demanding requirement," which mandates that the Debtor prove "a total incapacity . . . in the future to pay [her] debts for reasons not within [her] control." *Brightful,* 267 F.3d at 328 (quoting *Faish,* 72 F.3d at 307). As a result of this prong, a finding of undue hardship "is reserved for the exceptional case and requires the presence of 'unique' or 'extraordinary' circumstances which would render it unlikely that the debtor ever would be able to honor his obligations." *Sperazza v. Educ. Credit Mgmt. Corp. (In re Sperazza),* 366 B.R. 397, 411 (Bankr.E.D.Pa.2007) (quoting *In re Ballard,* 60 B.R. 673, 675 (Bankr.W.D.Va. 1986)).

Unfortunately, this prong places the Court in the "unenviable position" of having to predict the future. *In re Crawley,* Bankr.No. 04–35514, Adv. No. 09–0276, 2011 WL 5041506 at *11 (Bankr. E.D.Pa. Oct. 24, 2011) (quoting *In re Greenwood,* 349 B.R. 795, 803 (Bankr. D.Ariz.2006)). Nevertheless, from the facts presented, this Court finds that the Debtor has not met her burden of demonstrating that her present situation is likely to persist for a substantial portion of her loan repayment period.

The Debtor is currently unemployed. However, the Debtor's unemployment does not appear likely to continue. While the Debtor presented evidence that she has applied for and been denied employment at several jobs (*see* Doc. # 21, "Exhibit 9", "Exhibit 10"), the evidence shows that as the Debtor is well educated, maintaining both an associates and a bachelors degree. (*See* Audio Recording of Hearing Held in Courtroom D, October 26, 2011, (11:23–11:25 AM)). The Debtor also has relevant training as a result of her completion of certain computer courses. (*See* Doc. # 21, "Exhibit 11"). From the Court's observation and the Debtor's testimony, she appears to be an able-bodied and articulate woman. The Debtor also has a lengthy employment history. (*See* Doc. # 21, "Exhibit 11"). Moreover, the Debtor's testimony shows that she performed adequately in her prior positions as she received awards and was promoted at more than one of her jobs and has never been fired or let go for inadequate performance. (*See* Audio Recording of Hearing Held in Courtroom D, October 26, 2011, (11:27–11:30 AM)).

The Debtor did testify that she has a medical condition called nystagmus, which is characterized by involuntary rapid eye movement. (*See id.* at (11:15–11:17 AM)). However, the Debtor also testified that she has suffered from this condition throughout her entire academic and working life, is not disabled and has never applied for social security disability benefits. (*See id.* at (11:30–11:36 AM)). In fact, the Debtor testified that she believes she is able to work and is not seeking to be excused from her student loans based on this condition. (*See id.* at (11:31–11:32 AM), (11:34–11:36 AM)). It is the Debtor's burden to not only prove the extent of

her medical problem but also prove how this problem would impair her ability to work. *Brightful,* 267 F.3d at 330. The Debtor has not attempted to do this in her case; therefore, the Debtor's medical condition will not suffice to help her satisfy the second prong.

As explained above, the Debtor's acknowledged ability to work in combination with her positive employment history persuade this Court that her current inability to repay her student loan obligations is not "likely to persist" for a substantial portion of her loan repayment period. As a result, the Debtor has failed to meet her burden of proof as to the second prong of the *Brunner* test.

The Court's conclusion that the Debtor has failed to satisfy the second prong obviates the need for the Court to analyze the last remaining factor. *See Fabrizio v. U.S. Dep't of Educ. Borrower Servs. Dep't Direct Loans (In re Fabrizio),* 369 B.R. 238, 244 (Bankr.W.D.Pa.2007) ("Because the test is written in the conjunctive, if one of the three elements of the test is not proven, the inquiry ends there and the student loan cannot be discharged.") (citing *In re Faish,* 72 F.3d 298 (3d Cir.1995); *In re Brightful,* 267 F.3d 324 (3d Cir. 2001)). However, in the interest of completeness the Court will also consider whether the Debtor has made a "good faith" attempt to repay her student loans.

#### C.

■ The third prong of the *Brunner* test requires the Debtor to prove that she has "made a good faith effort" to repay her student loan obligations. *Faish,* 72 F.3d at 305 (citing *Brunner,* 831 F.2d at 396). The Third Circuit has stated that under this good faith analysis courts must consider "(1) whether the debtor incurred substantial expenses beyond those required to pay for basic necessities and (2) whether

the debtor made efforts to restructure his loan before filing his petition in bankruptcy." *Pelliccia v. United States Dep't of Educ.,* 67 Fed.Appx. 88, 90–91 (3d Cir. 2003) (not precedential).

■ The Debtor does not appear to have incurred substantial expenses beyond those required to pay for basic necessities. The Debtor testified that she maintains very little property of any value. (*See* Audio Recording of Hearing Held in Courtroom D, October 26, 2011, (11:11– 11:13 AM)). The Debtor's testimony is supported by a review of her schedules, which show that her only assets consist of personal property valued at under $3,000. (*See* Doc. # 21, "Exhibit 7"). The Debtor's schedules also evidence reasonable monthly expenses in the amount of $1,533.28 per month. (*See id.*).

With regard to whether the Debtor has made sufficient efforts to restructure her loans, counsel for ECMC highlights that the Debtor has failed to take advantage of the William D. Ford Income Contingent Repayment Plan ("ICRP") loan repayment option. (*See* Audio Recording of Hearing Held in Courtroom D, October 26, 2011, (12:01 PM–12:03 PM)). The ICRP allows a borrower's required payment amount to be recalculated annually based on the borrower's adjusted gross income. 34 C.F.R. § 685.209(a). The ICRP also allows the borrower's repayment obligation to be adjusted based on "special circumstances" such as loss of employment. 34 C.F.R. § 685.209(c)(3). Counsel proffered that under the ICRP the Debtor may have a payment of zero dollars (*see id.* at (11:46– 11:47 AM)), and suggests that the Debtor's failure to participate in the ICRP is indicative of her lack of good faith. (*See id.* at (12:01 PM–12:03 PM)).

The Court does not agree. Despite the availability of the program, it is unclear

from the Debtor's testimony to what extent the Debtor was aware of this repayment program or how it functions. (*See* Audio Recording of Hearing Held October 26, 2011, (11:45–11:47)).[3] While, the Debtor did not enroll in the ICRP program, it appears that Debtor has taken some steps to restructure her student loan debt prior to filing for bankruptcy protection. The Debtor did consolidate her student loan debt in November of 2004, presumably with the intention of finding a repayment arrangement that she would be capable of performing. (*See* Doc. # 20, "Exhibit D1"). The Debtor also submitted evidence that she began consistently making student loan payments even before graduating from college, albeit in varying amounts. (Doc. # 21, "Exhibit 2"). While the Debtor did seek periods of deferral and forbearance, which increased the total interest balance of the Debtor's loans, the Debtor credibly testified that she never missed a student loan payment outside of a period of forbearance or deferment. (*See* Audio Recording of Hearing Held in Courtroom D, October 26, 2011, (11:14–11:16 AM), (11:39–11:41)).[4]

This Court will join others within the Third Circuit in finding that while participation in various loan repayment programs may be a persuasive factor to be weighed as part of the good faith analysis,

the failure to take advantage of such programs is not dispositive. *See e.g., Speraza,* 366 B.R. at 413 ("[T]he ICRP is but one factor to be considered in determining undue hardship; participation in the program is not a prerequisite to dischargeability under section 523(a)(8).") (citing cases), *Crawley,* 2011 WL 5041506 at *16 (holding that a debtor's nonparticipation in the ICRP was not outcome determinative) (citing cases). *Cf. Shilling,* 333 B.R. at 723 ("While it may not be necessary in every case for a debtor to have participated in ICRP to show good faith for purposes of § 523(a)(8), we believe it is probative in this case.").

The Debtor's failure to pay the student loans after her period of unemployment and failure to participate in the ICRP makes the instant matter a close call. However, the Debtor has overcome these negative features by making consistent payments over a period of time, appearing to live well within her means, by taking advantage of deferment and forbearance periods and by restructuring her student loan obligations at least once prior to resorting to bankruptcy. Therefore, the Debtor has met her burden with regard to the third *Brunner* prong by demonstrating that she has made a good faith attempt to pay her student loan debts.

---

**3.** For example the Debtor testified that she would be interested in exploring a program that would allow her to continue to repay her loans. (*See* Audio Recording of Hearing Held in Courtroom D, October 26, 2011, (11:47–11:49 AM)). However, the Debtor also testified that she was not sure how a repayment amount of $0 would "make any sense" and did not appear to be aware of the steps required to enroll in the program. (*See id.* at (11:48–11:51 AM)).

**4.** Counsel for ECMC also suggests that because the Debtor did not make student loan payments while collecting unemployment income she may not satisfy the "good faith"

prong. (*See* Audio Recording of Hearing Held in Courtroom D, October 26, 2011, (12:01–12:02 PM)). The Court does not find this argument persuasive. The Debtor's schedules show that despite her unemployment situation, the Debtor maintained over $300 per month in disposable income. (*See* Doc. # 21, "Exhibit 7"). However, the impact of this failure to pay during the Debtor's period of unemployment is mitigated by the fact that, at the time, the Debtor's loans were in deferment (*see Joint Stipulated Facts,* ¶ 37), and she had been making payments in some form over a period of fifteen years. (*See* Doc. # 21, "Exhibit 2").

### D.

As a final point, the Debtor insists that requiring her to repay her student loan obligations at age forty-three would constitute an undue hardship because she would not be able to afford health insurance or to save for her retirement. The Court empathizes with the plight described by the Debtor but is not persuaded by the Debtor's argument. Under applicable law, the Court is not permitted to factor in the Debtor's extraneous or equitable concerns when applying the *Brunner* test. *See Faish,* 72 F.3d at 306.

### III.

The Third Circuit has announced in no uncertain terms that under the second prong of the *Brunner* test the Debtor must prove "a total incapacity" to pay her debts in the foreseeable future. *Brightful,* 267 F.3d at 328. In this case the Debtor has not met that burden. As all three prongs of the *Brunner* test must be met, and the Debtor has clearly failed the second, the Debtor's request for a discharge of her student loan debt based on "undue hardship" must be denied. Therefore, judgment must be entered in favor of defendant ECMC and against the Debtor. An order consistent with this *Memorandum Opinion* shall be issued by the Court.

### ORDER

**AND NOW,** this *4th day* of *January, 2012,* for the reasons expressed in the *Memorandum Opinion* entered this date, the Court hereby **ORDERS, ADJUDGES** and **DECREES** that judgment is entered in favor of defendant ECMC and against the Debtor. The debt owed to defendant by the Debtor is **NOT DISCHARGED** pursuant to 11 U.S.C. § 523(a)(8).