In re Hershel Wayne DAVIS and Verna Maureen Davis, d/b/a Hershel's General Store and d/b/a Lawn Mower Center, Debtors.

Hershel Wayne DAVIS and Verna Maureen Davis, Plaintiffs,

v.

LAMESA INDEPENDENT SCHOOL DISTRICT, Defendant.

Bankruptcy No. 580–00072.
Adv. No. 581–0029.

United States Bankruptcy Court,
N. D. Texas,
Lubbock Division.

June 3, 1981.

R. Byrn Bass, Jr., Lubbock, Tex., for debtor.

Larry R. Brandon, Amarillo, Tex., for defendant.

Thomas J. Griffith, Lubbock, Tex., trustee.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

This Memorandum and Order treats the subject of when a tax is "assessed" within the meaning of §§ 507(a)(6)(B) and 523(a)(1)(A).

The debtors filed petition for order for relief under Chapter 7 of Title 11, United States Code, on August 29, 1980. On December 9, 1980, after discharge hearing contemplated by § 524(d), order was entered discharging the debtors from all dischargeable debts.

Prior to the time the bankruptcy proceedings were initiated the debtors had conducted business in Lamesa, Texas, under the common names and styles of Hershel's General Store and of Lawn Mower Center. After the order of discharge was entered the tax collector for Lamesa Independent School District made demand upon the debtors for payment of the ad valorem taxes assessed against the inventory of those two operations as such inventory existed on January 1, 1980. The debtors initiated this adversary proceeding, seeking determination that the claim for ad valorem taxes is dischargeable, for injunction, and for contempt for violating the stay against pro-

ceeding against the debtors. Issue was joined and trial was conducted on April 23, 1981. The following summary constitutes the findings of fact contemplated by Rule 752.

§ 523(a)(1) excepts from discharge a tax of the kind and for the periods specified in § 507(a)(2) or § 507(a)(6), whether or not a claim for such tax was filed or allowed. § 507(a)(6)(B) provides sixth priority in payment to allowed unsecured claims of governmental units to the extent that such claims are for a property tax assessed *before the commencement of the case* unless payable without penalty after one year before the date of the filing of the petition. (Emphasis added) The thrust of the complaint by the debtors is that the ad valorem taxes of Lamesa Independent School District had not been assessed before the commencement of the case, were not entitled to be allowed as a priority unsecured claim, and thus are not excepted from discharge under 523(a)(1)(A).

An examination of the decisions reflect that the word "assessment" has no fixed meaning. In some instances it has been regarded as connoting the listing of property for taxation. Other cases reflect that the listing plus valuation forms the assessment. Finally, the entire administrative procedure up to and including the fixing of the rate of tax or levy and its apportionment to the property being taxed has been described as comprising the "assessment".

One of the most frequently cited cases on the issue is that of the Texas Supreme Court in *State v. Farmer*, 94 Tex. 232, 59 S.W. 541 (1900), affg. 57 S.W. 84 wherein the court said:

"Assessment (as used in § 15, Art. 8, Constitution) evidently means the sum which has been ascertained as the apportioned part of the tax to be charged against the—property, but under our Constitution, and—our statute, the word embraces more than simply the amount and includes the procedure on the part of the officials by which the property is listed, valued, and finally the pro rata declared."

Other decisions do not give to "assessment" the scope suggested by *State v. Farmer* and its progeny. *Sullivan v. Bitter*, 51 Tex.Civ.App. 604, 113 S.W. 193 (1908), when denying boards of equalization the right to "add" property, holds that "an assessment involves a listing—and an estimation of the sums which are to be the guide in the apportionment of the tax. An assessment—is absolutely essential to support a tax." *Dallas Joint Stock Land Bank of Dallas v. State*, 118 S.W.2d 941 (Tex.Civ. App.1938) is one of the cases cited by the School District. That case quotes from *George v. Dean*, 47 Tex. 73:

"An assessment—is an altogether different thing from the tax roll. By the assessment, the liability of the taxpayer is fixed. It ascertains the facts, and furnishes the data for the proper preparation of the rolls. To make an assessment, the officer—is required to ascertain and make an inventory or list of the property upon which the tax has been levied, and to estimate or determine its value. When the property is listed and valued, the amount of tax for which the owner is liable is merely a matter of arithmetical calculation. While this amount should be shown—by the tax roll, if properly prepared, it is not an essential part—of the assessment."

■ ·The most recent decision on the issue by the Texas appellate courts is found in *Bexar County, Texas et al. v. Connell Leasing Company, et al.*, 611 S.W.2d 496 (Tex.Civ.App. San Antonio, 1981). The Court of Civil Appeals in that case rejected the contentions advanced by the tax assessor that once the assessor values the property and certifies the tax roll to the Board of Equalization the assessment process is complete. That court quoted the above cited portion of the Supreme Court decision in *State v. Farmer* and concluded that the term "assessment" embraces more than valuation of the property, but also includes the fixing of the tax liability. In my opinion, *State v. Farmer* and its progeny, including the above mentioned 1981 San Antonio Court of Civil Appeals opinion, accurately expresses the state law on the subject.

In this case the tax assessor for the Lamesa Independent School District had prepared the list of property as that property existed on January 1, 1980, on some date prior to the filing of the bankruptcy petition. In the case of debtors' property there was no evidence adduced as to whether the assessor had accepted the value rendered by the taxpayer, if the debtors did in fact render the property, or whether different values were assigned by the assessor. In any event the assessor had presented to the Board of Equalization the property list with the assessor's values.

■ On August 18, 1980, the Board of Trustees of the Lamesa Independent School District passed an ordinance, fixing and levying ad valorem taxes for the Lamesa Independent School District for the year 1980. It is that date which the school district claims was the assessment date. If its version is accepted the assessment would have been made eleven days prior to the commencement of the bankruptcy proceedings.

The August 18, 1980, ordinance, however, went further. In Section I of the ordinance it provided: "there is hereby levied and ordered *to be assessed* on 100% valuation and collected for the year 1980 an ad valorem tax at the tax rate of 73 cents on $100.00 assessed valuation of such property." It contemplated that the actual assessment was to follow *after* 100% valuation was established. The Board of Equalization did not approve the tax roll until September 15, 1980, more than two weeks after the bankruptcy proceeding had commenced, thus establishing 100% valuation of all listed properties. Until the Board of Equalization had closed its rolls, and thereby fixed the value on each parcel of property for the 1980 tax year, the tax liability could not be fixed and the "assessment" could not be made.

■ The court concludes, therefore, that the ad valorem taxes which the Lamesa Independent School District seeks to collect from the debtors had not been assessed when the bankruptcy proceedings were commenced, the taxes are not entitled to priority treatment under § 507,[1] and the taxes are not excepted from discharge under § 523. The stay against proceeding against the debtors for those taxes remains effective.

It is, therefore, ORDERED by the court that Lamesa Independent School District be, and it is hereby, permanently enjoined from collecting, or attempting to collect, from debtors, Hershel Wayne Davis and Verna Maureen Davis, the ad valorem taxes assessed on inventory of Hershel's General Store and of Lawn Mower Center as that inventory existed on January 1, 1980.

It further appears to the court, however, that the demand made by the taxing unit upon the debtors for payment of the tax was made in good faith. It would be inequitable to assess expenses and attorney's

1. Although the issue is not presented by the pleadings the court notes that an order was entered in adversary number 581–0008, the effect of which was to permit First National Bank of Lamesa to foreclose its valid security agreement lien against all of the inventory in the possession of the trustee at the time the bankruptcy proceedings were commenced. That inventory is the same property for which Lamesa Independent School District seeks to recover ad valorem taxes. The school district has filed proof of claim in this bankruptcy proceeding. The interest of the estate in that personal property is valueless and the claim for ad valorem taxes may not be allowed by virtue of the provisions of 11 U.S.C. § 502(b)(4) which states:

"Except as provided in subsections (f), (g), (h), and (i) of this section, if objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim and such amount, *except to the extent that if such claim is for a tax assessed against property of the estate, such claim exceeds value of the interest of the estate in such property.*" (emphasis added).

Since there is no interest of the estate in and to the property against which the tax was ultimately assessed, the tax claim must be disallowed and is not entitled to distribution under § 726. To the extent that a claim is disallowed under § 502(b)(4) it is not allowed for any purpose, whether it be priority or whether it be for distribution as a nonpriority claim. 3 Collier on Bankruptcy ¶ 502.02[4] at 502–40 (15th ed. 1979).

fees against Lamesa Independent School District.

LET JUDGMENT BE ENTERED ACCORDINGLY.