## In re MILIT, INC. f/k/a Alexander & Alexander Insulation Contractors, Inc., Debtors.

### Bankruptcy No. 97–51369–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

March 25, 1999.

---

John Patrick Lowe, Uvalde, TX, Chapter 7 Trustee.

Dan Morales, Atty. General of Texas, Jorge Vega, First Assistant Atty. General, David A. Talbot, Deputy Atty. General for Litigation, Ronald R. Del Vento, Assistant Atty. General, Chief, Bankruptcy & Collections Div., Mark Browning, Assistant Atty. General, Bankruptcy & Collections Div., Austin, TX, for Texas Workforce Commission.

### MEMORANDUM OPINION AND ORDER

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the Trustee's Motion to Approve Agreement Between the Chapter 7 Trustee and Ad Valorem Tax Claimants. The Texas Workforce Commission filed an Objection to the Motion, in which it took the position that the settlement was improper because the ad valorem tax claimants were not entitled to a claim in the bankruptcy. The Court entertained argument from the parties, after which it took the matter under advisement. This order resolves the objection and the motion.

Milit, Inc. filed for Chapter 11 bankruptcy in March, 1997. The case was converted to Chapter 7 in July, 1997. The Chapter 7 trustee filed an objection to ad valorem tax claims asserted by Bexar County, the State of Texas, and the City of San Antonio. The trustee's objections sought to avoid liens which secure claims for penalties pursuant to 11 U.S.C. § 724(a), to subordinate the resulting unsecured claim for penalties pursuant to section 724(a)(4), and to redetermine the taxable value of the property pursuant to section 505 of the Code.

The trustee and the ad valorem claimants have reached an agreement which would resolve these objections. That agreement provides that the liens for penalty claims will be avoided, that the resulting unsecured claim will be subordinated, and that the taxable value of the property subject to the ad valorem tax claim will be reduced to $32,800.00. The agreement also provides for the payment of post-petition administrative personal property tax claims within 20 days of the Court's approval of the agreement.

The Texas Workforce Commission (TWC) has asserted a secured claim for $17,665.83 for prepetition state employment taxes against the same property that is the subject of the ad valorem claims. TWC argues that the ad valorem claimants should not be given the status of secured creditors because their claims should be disallowed pursuant to section 502(b)(3) of the Code. That section provides that a claim "for a tax assessed against property of the estate" shall be allowed "except to the extent that... such claim exceeds the value of the interest of the estate in such property." 11 U.S.C. § 502(b)(3). TWC argues that the phrase "value of the interest of the estate in such property" means the equity in such property. TWC then reasons that the "value of the estate's interest" is zero because there is no equity in the property. TWC therefore concludes that the ad valorem claims must be disallowed in their entirety or, more properly, the ad valorem claims must be disallowed to the extent they exceed zero, the equity in the property.

At first blush, TWC's reading of the statute is beguiling, and finds some support in bankruptcy case law. *See, e.g. In re Spruill,* 78 B.R. 766 (Bankr.E.D.N.C.1987) and cases cited *infra,* note 6. Careful consideration, however, reveals that interpreting "interest of the estate" to mean "equity" would create havoc in the interpretation of other provisions of the Code which use similar language. The Supreme Court has instructed that statutes should not be interpreted in a way that would produce an absurd result. *See Chapman v. United States,* 500 U.S. 453, 476, 111 S.Ct. 1919, 1933, 114 L.Ed.2d 524 (1991). It is therefore necessary to return to first principles to determine the proper effect of section 502(b)(3).

Section 502 of the Bankruptcy Code deals with the allowance and disallowance of claims. The allowance or disallowance of claims is crucial to the function of the bank-

ruptcy system; only allowed claims receive distributions from the bankruptcy estate, and many other creditor protections are keyed to the concept of allowed claims. *See* 4 Collier on Bankruptcy, ¶ 502.01 (15th ed.1996). Section 502(b) dictates which claims (or which portion of claims) will be disallowed if an objection is made to the claim. Ad valorem claims, such as those at issue in this case, must satisfy section 502(b)(3) in order to be an allowed claim in the bankruptcy. That provision provides:

> "... [T]he court ... shall allow such claim ... except to the extent that—if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property." 11 U.S.C. § 502(b)(3).

The meaning of the phrase "value of the interest of the estate in such property" is critical to the operation of section 502(b)(3). This is the phrase at issue in this case. In order to determine what the "value of the interest of the estate in such property" means, however, it is first necessary to define what the estate's interest in the property is. In other words, one cannot competently determine the *value* of X without first precisely defining just what X is.

The Supreme Court has directed that statutes must be construed in light of related statutes which use similar language. *See United Savings Ass'n. of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). "Statutory construction," stated the court, "is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear." *Id.* The apparent ambiguity of section 502(b)(3) is resolved by just such a "holistic" analysis.[1]

The estate's interest in property is defined by section 541(a) of the Bankruptcy Code, which at the commencement of the case sweeps the debtor's property into the bankruptcy estate regardless whether that property is subject to a security interest. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203–04, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Section 541(a)(1) provides that the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In something of an understatement, courts have described the scope of this provision as "broad." *See Whiting Pools*, 462 U.S. at 205, 103 S.Ct. at 2313; *Century Hotels v. United States*, 952 F.2d 107, 112 (5th Cir.1992); *In re El Paso Refinery, L.P.*, 220 B.R. 37, 42 (Bankr.W.D.Tex. 1998). In *Whiting Pools*, the Supreme Court held that the breadth of section 541(a)(1) meant that the debtor's property which is subject to a security interest becomes property of the estate. The Court wrote:

> "... all the debtor's property must be included in the reorganization estate. This authorization extends even to property of the estate in which a creditor has a secured interest. Although Congress might have safeguarded the interests of secured creditors outright by excluding from the estate any property subject to a secured interest, it chose instead to include such property in the estate and to provide secured creditors with 'adequate protection.'" 462 U.S. at 203, 103 S.Ct. at 2313.

Once an article of the debtor's property that is subject to a security interest becomes a part of the bankruptcy estate, section 506(a) determines how the secured claims against that property will be treated in the bankruptcy.[2] Section 506(a) bifurcates the

---

**1.** Ironically, the ambiguous phrase at issue in *Timbers* was "interest in property," referring to the creditor's security interest entitled to adequate protection pursuant to 11 U.S.C. § 362(d)(1). *See Timbers*, 484 U.S. at 370, 108 S.Ct. at 630.

**2.** 11 U.S.C. § 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent

of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

secured creditor's claim into an allowed secured claim and an unsecured claim. *See United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 239, 109 S.Ct. 1026, 1029 n. 3, 103 L.Ed.2d 290 (1989). The secured creditor has an allowed secured claim "to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a).[3] The creditor has an unsecured claim to the extent its interest (in the estate's interest) is less than the amount of its claim. That is, the secured creditor has an unsecured claim for the amount that its claim exceeds its interest in collateral. *Id.* In other words, section 506(a) treats the "estate's interest" as the *whole property* that came into the estate under section 541(a), and treats the "creditor's interest" as a fraction of that whole. Thus, a creditor with a security interest in estate property gets a secured claim up to 100% of the value of the whole property, and gets an unsecured claim for anything else. *See Nobelman v. American Sav. Bank,* 508 U.S. 324, 328, 113 S.Ct. 2106, 2109, 124 L.Ed.2d 228 (1993); *Ron Pair Enterprises,* 489 U.S. at 239, 109 S.Ct. at 1029 n. 3.

Section 502(b)(3) must likewise uses the term "interest of the estate in such property" to refer to the *whole property* that came into the estate under section 541(a), regardless of any secured claims against the property. *See Timbers,* 484 U.S. at 371, 108 S.Ct. at 630. The "value of the interest of the estate in such property" therefore must refer to the gross value of the property that came into the estate, regardless of liens. Ad valorem tax claims are allowed only up to the extent of the gross value of the property of the estate which is the subject of the claim. Section 502(b)(3) thus converts all property tax claims into non-recourse debt in bankruptcy.

A different construction of "estate's interest" would make nonsense of other provisions of the Code. *See Timbers,* 484 U.S. at 371, 108 S.Ct. at 630. If the "estate's interest" were read to mean "equity," then § 506(a) would define a secured claim as "the creditor's interest in the equity." The cramdown of a secured creditor in Chapter 11 would be simpler—the plan would need only provide that the creditor receive deferred cash payments equal to the value of its interest in the equity in the property. 11 U.S.C. § 1129(b)(2)(A)(i)(II).[4] That value is, of course, zero—because equity is by definition *not* subject to a security interest. Equity is what is left over *not* of the security interest. Furthermore, if "estate's interest" referred only to equity, section 363(f), which allows the trustee to sell property "in which the estate and an entity other than the estate have an interest" free and clear of liens would be superfluous because the estate could have no interest in property subject to a lien.[5]

A "holistic" construction of section 502(b)(3) requires that limitation to the "value of the interest of the estate" refer to the

---

**3.** The statute uses such awkward phrasing to account for the possibility that the debtor had only a limited or partial interest in the property before the bankruptcy, in which case the entire property may not become property of the estate. *See Associates Commercial Corp. v. Rash,* ⸺ U.S. ⸺, 117 S.Ct. 1879, 1885, 138 L.Ed.2d 148 (1997).

**4.** 11 U.S.C. § 1129(b)(2) provides:
For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
  (A) With respect to a class of secured claims, the plan provides—
    (i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
    (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

**5.** If that were not warning enough that "estate's interest" does not mean "equity," there remains to be considered the effect such a ruling would have on the priority of the creditors in this case. At state law, property tax claims prime all other liens on property. *See, e.g.,* TEX. TAX CODE ANN. § 32.01; *Central Appraisal Dist. v. Dixie–Rose Jewels, Inc.,* 894 S.W.2d 841 (Tex.App.1995). There is no doubt that TWC, despite its perfected liens, would be second in line to the ad valorem claimants. Here, TWC is suggesting that it has priority over the ad valorem tax claims, by operation of § 502(b)(3). This Court is not convinced that Congress, by enacting the Bankruptcy Code, was intending to turn state law on its head in this way.

608

gross value of the property that entered the bankruptcy estate at the commencement of the case, and does not refer to the equity in the property.[6] TWC's objection to the Motion to Approve Agreement is therefore **OVERRULED.**

The Motion to Approve Agreement Between the Chapter 7 Trustee and Ad Valorem Tax Claimants is **GRANTED.**

So **ORDERED.**

---

**6.** Some bankruptcy courts which have addressed this issue have focused on the word "value" in 11 U.S.C. § 502(b)(3). This leads to confusing inquiries into value or equity. *See In re Mall at One Assocs., L.P.,* 185 B.R. 1009 (Bankr.E.D.Pa. 1995); *In re Spruill,* 78 B.R. 766 (Bankr. E.D.N.C.1987); *Skinner Lumber Co., Inc.,* 35 B.R. 31 (Bankr.D.S.C.1983); *In re Damar Machine, Inc.,* 30 B.R. 256 (Bankr.D.Maine 1983); *Davis v. Lamesa Independent School District (In re Davis),* 11 B.R. 621 (Bankr.N.D.Tex.1981); *Griffith v. Plainview Independent School District (In re Transco Corp.),* 11 B.R. 310 (Bankr. N.D.Tex.1981); The above analysis indicates that the effect of § 502(b)(3) is simply to convert ad valorem tax creditors to non-recourse creditors, regardless of the value of the property. That approach leads to the correct result every time.