**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 01-20456**

---

**In The Matter of:  UNIVERSAL SEISMIC ASSOCIATES, INC.,**

**Debtor.**

---------------------------------------

**UNIVERSAL SEISMIC ASSOCIATION, INC.;**
**UNIVERSAL SEISMIC ACQUISITION, INC.,**

**Appellants,**

**VERSUS**

**HARRIS COUNTY; CITY OF HOUSTON;**
**KATY INDEPENDENT SCHOOL DISTRICT,**

**Appellees.**

---

Appeal from the United States District Court
For the Southern District of Texas

April 8, 2002

Before SMITH and DeMOSS, Circuit Judges, and DUPLANTIER,[1] District
Judge.

DeMOSS, Circuit Judge:

---

[1]     District Judge for the Eastern District of Louisiana,
sitting by designation.

Universal Seismic Associates, Inc. and its subsidiaries (collectively referred to as "Debtors") were providers of three-dimensional seismic acquisition and processing services to the energy industry. On September 7, 1999, Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Debtors' Chapter 11 plan was confirmed by an order entered May 3, 2000. The terms of the Debtors' confirmed plan of reorganization specifically provided for the retention of jurisdiction by the Bankruptcy Court to "determine the allowance or disallowance of Claims and Interests," including the claims filed by Harris County/City of Houston and Katy Independent School District (the "Taxing Authorities"). On October 12, 1999, the Taxing Authorities filed proofs of claim in the amounts of $33,731.06 (Harris County) and $47,050.11 (Katy Independent School District). Each of the proofs of claim filed by the Taxing Authorities was for ad valorem business personal property taxes for the tax years 1998 and 1999. The Taxing Authorities alleged a security interest in the business personal property of the Debtors to secure payment of their claims.

The Debtors had equipment that was purchased or leased from third parties in connection with their business. Soon after filing for bankruptcy, the Debtors returned almost all personal property to secured creditors/lessors pursuant to agreements and orders of the Bankruptcy Court. The Debtors retained only some vehicles, which were sold for $54,500.00, and office furnishings valued at

$3,700.00, equaling a combined value of $58,200.00. The total of the claims filed by the Taxing Authority, $81,054.73, was far in excess of the total value of the remaining personal property, but the Taxing Authorities contended this property remained encumbered by their tax lien, up to the full value of the remaining property. The Bankruptcy Court agreed and the District Court affirmed. For the reasons set forth below we also affirm.

This Court applies the same standard of review as the district court does reviewing the Bankruptcy Court's factual findings for clear error and its legal conclusions and mixed questions of fact and law under a *de novo* standard. ***In re Mercer***, 246 F.3d 391, 402 (5th Cir. 2001). Section 32.01(b) of the Texas Tax Code states that:

> (a) On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property, whether or not the taxes are imposed in the year the lien attaches. The lien exists in favor of each taxing unit having power to tax the property.
>
> (b) A tax lien on inventory, furniture, equipment, or other personal property is a lien in solido and attaches to all inventory, furniture, equipment, and other personal property that the property owner owns on January 1 of the year the lien attaches or that the property owner subsequently acquires.

TEX. TAX CODE ANN. §§ 32.01(a) & (b)(2001). The term *in solido* literally means "as a whole" and creates an obligation of joint and several liability. BLACK'S LAW DICTIONARY 799 (7th ed. 1999). The Taxing Authorities relied on this section to establish their lien

3

on all of the Debtor's property. The Debtors appear to recognize that this lien existed, but claim that 11 U.S.C. § 502(b)(3) acts to remove the underlying claims for taxes on property that they no longer have an interest in, i.e. the property that was sold just prior to and subsequent to the bankruptcy filing.

Section 502(b) states that the court shall allow claims, except to the extent that, "if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property." 11 U.S.C. § 502(b)(3). The interpretation of § 502(b)(3) is an issue of first impression in this Circuit, and there is little guidance on the statute's interpretation in other circuits or at other levels of the court system. Therefore, "[a]s in any case of statutory interpretation, we look to the plain language of the statute, reading it as a whole and mindful of the linguistic choices made by Congress." *Whatley v. Resolution Trust Corp.*, 32 F.3d 905, 909 (5th Cir. 1994); *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d. 350, 362 (5th Cir. 1995) (stating that the starting point of interpreting a statute is with the plain language and if the language is plain and unambiguous, it must be given effect). This Circuit has also noted that when a plain reading of a statute precludes one party's interpretation, "no legislative history – be it ever so favorable – can redeem it." *Nalle v. Comm'r*, 997 F.2d 1134, 1140 (5th Cir. 1993). In areas of law where state and federal regulations are coincident, this Court

4

is enjoined from seeking out conflicts between the two where none clearly exists. *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 130 (1978) (citing *Huron Cement Co. v. Detroit*, 362 U.S. 440, 446 (1960)). As to the applicability of state property taxes in such proceedings, the Supreme Court has stated:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609 (1961). The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.

*Butner v. United States*, 440 U.S. 48, 54-55 (1979) (internal footnote omitted). The Court also noted that while it is true that the Constitution grants Congress the power to enact Bankruptcy laws that would suspend conflicting state laws, those laws are only suspended to the extent that they actually conflict with the Bankruptcy Act. *Id.* at 54, n. 9.

Debtors ask that we read § 502(b)(3) to mean that once a party no longer has an interest in property, the underlying tax on that property that created the lien must necessarily be denied, and that this reading of § 502(b)(3) supersedes the Texas Property Tax Code.

5

Such a reading goes against the plain language of the statute. We hold that a more logical reading of § 502(b)(3) is that a claim for taxes on property can not exceed the value of the property that is remaining in the bankruptcy estate. Under section 32.01(b) of the Texas Tax Code, a lien on **all** of the taxed property was created as of January 1, 1999. The Taxing Authorities were entitled to this amount but, under § 502(b)(3), they could not claim more than the value of the interest the Debtors' had in the estate. We hold that the "value of the interest of the estate" refers to the gross value of the property that entered into the bankruptcy estate. *In re Milit, Inc.*, 231 B.R. 604, 607-08 (Bankr. W.D.Tex. 1999). The Bankruptcy Court found the gross value of the property entering the bankruptcy estate to be $58,200.00 and we do not find this to be in error. We therefore affirm the Bankruptcy and District Courts' decisions.

**AFFIRMED.**