Dian Maria **JONES,** Debtor/Appellant,

v.

**BANK ONE TEXAS, Edfinancial Services, Educational Credit Management Corporation, Nelnet, North Texas Higher Education Authority, Texas Guaranteed Student Loan Corporation, and Wells Fargo Student Loans, Appellees.**

Civ.A. No. W–06–CV–233.

United States District Court,
W.D. Texas,
Waco Division.

Aug. 13, 2007.

Dian Maria Jones, Harker Heights, TX, pro se.

Donald W. Cothern, Law Office of Donald W. Cothern, Tyler, TX, Troy A. Gunderman, St. Paul, MN, Doug W. Ray, Ray Wood & Bonilla, LLP, Austin, TX, for Appellees.

## MEMORANDUM OPINION AND ORDER

WALTER S. SMITH, JR., Chief District Judge.

Before the Court is an appeal that challenges the Bankruptcy Court's finding that Dian Maria Jones will not receive a discharge of her student loan debt. Thus, she would remain liable to pay the debt owed to Educational Credit Management Corporation and Texas Guaranteed Student Loan Corporation. On August 3, 2006, the Bankruptcy Court issued its "Memorandum Opinion." This appeal followed. The Appellant is Dian Maria Jones ("Debtor"). Appellees are Bank One Texas, EDFinancial Services, Nelnet, North Texas Higher Education Authority, Wells Fargo Student Loans, Educational Credit Management Corporation ("ECMC"), and Texas Guaranteed Student Loan Corporation ("TGSLC").[1] The Court, having reviewed the Briefs, pleadings, and applicable legal authority, will overrule both of Debtor's issues and affirm the Bankruptcy Court's decision that Debtor will not receive a discharge of her student loan debt.

## I. FACTUAL BACKGROUND

Debtor was married in 1998. Her spouse earned income as retired military and from a real estate business. She received a G.E.D. diploma from high school. Debtor chose to stop working when she was married, and her explanation for not working was to start a family. Debtor had a child in 2000, approximately two years after being married. Debtor continued to not work after her son's birth because she wanted to stay home with him. She worked before she was married and, at the time she exited the workforce, she held higher management positions.

Debtor and her spouse separated in July 2002. After the separation, Debtor did not look for work. She decided not to work because of the legal process involved with the divorce, which resulted in a four-day trial. Debtor has continued not to seek out employment after the completion of her divorce instead continuing with her education.

Debtor has attended Tulsa Junior College, Brookhaven College and North Texas State University accumulating approximately 90 credits for lower division courses. The students loans at issue were taken out for credits taken at Tulsa Junior

---

1. ECMC and TGSLC are the only Appellees who filed briefs. At the trial in Bankruptcy Court, the parties agreed that only ECMC and TGSLC currently hold the debt at issue in the suit and are the only defendants in the suit.

College (from ECMC) and Brookhaven College (from TGSLC). Most recently, Debtor attended Central Texas College, earning around 30 credits and also earned 25 credits at Temple College where she plans to attend school full-time this coming Fall in pursuit of a nursing degree. She needs to make a "C" in an anatomy and physiology course in order to enter the nursing program, a subject area in which she testified she has struggled. Debtor has not earned any degree yet. She still needs several courses to get an associates degree in general studies.

Debtor represented herself in the appeal for the custody for their child, the filing of her bankruptcy, the adversary proceeding, and the present appeal. Debtor is now 48 years old and her minor child lives with her. She plans to become an RN or LVN. Debtor is a full-time student at Temple College taking prerequisite courses for admission to the nursing program at Temple College. If accepted to the nursing program, it will take her approximately two years to complete the program, which is when she would be fifty-one years old. Debtor's residency is limited to Bell County, Texas due to a county restriction ordered in the custody decision pertaining to the dependent child as part of her divorce. Debtor's options for education are limited in the Bell County area to two junior colleges (Temple College and Central Texas College), one private university (University of Mary Hardin–Baylor), and one university extension (Tarleton University).

Debtor receives (1) a social security benefit of $478 per month for her son because of his father's retirement[2]; (2) $429 per month in Section 8 housing assistance[3];

(3) utility assistance via federal aid titled Comprehensive Energy Assistance Program[4]; (4) assistance with gasoline purchases and school books during the school year from Hill County Community Action; (5) free health care through County Indigent Health Care Program for Bell County; (6) $213 per month in food stamps; (7) reduced private school tuition for her six year-old son; and (8) receives PELL Grants for her current education at Temple College. Debtor is below poverty guidelines per year for a family of two. Debtor's expenses are approximately $1,100 per month. She allows herself and her son approximately $40.00 for internet services and movie rentals per month. Debtor drives a 1996 Chevrolet Lumina, with approximately 128,000 miles. Debtor has no assets. Debtor testified, "If I go to work, then I'm going to lose some of my other benefits." Debtor testified that if she makes over $231 per month, she will lose her health care.

The original total amount of the student loans was $30,325. The total student loans balance owing is now approximately $50,000. TGSLC is the guarantor of approximately $45,630. ECMC is the guarantor of approximately $4,370. The student loans are all Stafford loans and are subject to repayment through the William D. Ford Federal Direct Loan Program. Debtor has not made any payments on the student loans. None of the student loans are in default. Deferments have been granted while she has been attending school but interest has continued to accrue. Nine years have passed since Debtor's last student loan.

2. According to Social Security regulations, Debtor is only to use this benefit for the child.

3. Debtor pays $71 per month toward the housing expense.

4. Debtor pays a co-payment.

Debtor testified that she did not apply to repay the debt through the William D. Ford Federal Direct Loan Program, a federal program with repayment plans available to address various repayment needs. She testified that she did not apply because it imposes a 25–year burden of payments, she was not sure if all of her loans qualified for the program, and if she should ever have a change in life, such as a marriage, she did not want to saddle the future husband with repayment.

## II. PROCEDURAL BACKGROUND

Debtor filed her Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code on October 14, 2005, Case No. 05–63122. Debtor/Plaintiff filed her Adversary Proceeding on January 20, 2006 and her Amended Complaint on January 24, 2006, seeking a discharge of her student loan debt under 11 U.S.C. § 523(a)(8) of the Bankruptcy Code, alleging that repayment of the student loan debt would cause "undue hardship" on her and her dependent.

The case was tried to United States Bankruptcy Court for the Western District of Texas, Waco Division on July 11, 2006. On August 3, 2006, the Court issued its Judgment and Memorandum Opinion. The Court ruled in favor of the Defendants, finding that the student loan debts owed by Plaintiff were determined to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(8). The Bankruptcy Court found that Plaintiff met the first prong of the *Brunner* test by showing that she cannot maintain, based on current income and expenses, a "minimal" standard of living if required to repay the student loan debts at issue. As to the second prong, the Bankruptcy Court found that Plaintiff did not show herself to be more than in current financial straits, and that she has none of the additional limitations noted in *Ger-*

*hardt* to prevent repayment of the debt such as continuing mental problems, lack of usable job skills, or a severely limited education. Her testimony showed that prior, to getting married and having a child, she was able to obtain an entry level job and through her good work skills, move upward in the employer's management hierarchy to attain a job with more responsibilities. The Bankruptcy Court further found that Plaintiff failed to meet this second prong by failing to prove a total incapacity in the future to repay the debt owed to Defendants.

The Court found that the Plaintiff also failed to prove the third prong, which requires that she make a good faith effort to repay the debt. It was uncontradicted that Plaintiff had made no payments on any of the loans. The Court found there was evidence that Plaintiff had not sufficiently explored the ability to secure repayment help through the William D. Ford Federal Direct Loan Program, a program which might help her, although she had no legal obligation to apply to such a program. Plaintiff testified that she did not pursue the Ford program because of the 25–year burden of payments, she was not sure if all of her loans qualified for the program, and if she should ever have a change in life, such as a marriage, she did not want to saddle the future husband with repayment. The Court determined that the facts failed to establish a good faith effort by the Plaintiff to repay her loans.

Plaintiff filed her Motion for Leave to Appeal following entry of Judgment by the Bankruptcy Court. This Court granted the Motion on September 18, 2006. Debtor/Appellant filed her Brief on January 31, 2007. Appellees ECMC and TGSLC filed their Briefs on February 15, 2007. Debtor/Appellant filed her Reply Brief on February 27, 2007.

### III. STANDARD OF REVIEW

 A district court reviews a bankruptcy court's decision under the same standard of review that a court of appeals applies to a district court judgment. *See* 28 U.S.C. § 158(c)(2). The court reviews the Bankruptcy Court's findings of fact for clear error and its legal conclusions and mixed questions of law and fact under a *de novo* standard of review. *Universal Seismic Assocs., Inc. v. Harris County (In re Universal Seismic Assocs., Inc.),* 288 F.3d 205, 207 (5th Cir.2002). Moreover, the court may affirm if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below. *Bonneville Power Admin v. Mirant Corp. (In re Mirant Corp.),* 440 F.3d 238, 245 (5th Cir.2006).

The discharge of an educational loan is governed by 11 U.S.C. § 523, which provides in relevant part:

A discharge under this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. § 523(a)(8).[5]

### IV. ANALYSIS

***1. Issue 1: Whether the trial court erred in considering the meaning of "additional circumstances" in the " 'undue hardship' test." Whether the trial court applied the correct legal standard.***

Debtor does not dispute any of the Bankruptcy Court's findings of facts. Debtor first argues that because the Bankruptcy Court found for the first prong that she is not able to maintain a minimal standard of living if required to repay the student loan debts, then she has clearly met the hardship requirement to discharge her debts. Next, Debtor argues that the Bankruptcy Court should have followed the Ninth Circuit in *Educational Credit Management Corporation v. Nys (In re Nys),* 446 F.3d 938 (9th Cir.2006). In *Nys,* the court stated that a "debtor does not have a separate burden to prove 'additional circumstances,' beyond the inability to pay presently or in the future." 446 F.3d at 945. Further, Debtor argues that the Bankruptcy Court should have considered the unexhaustive list of "additional circumstances" in *Nys. Id.* at 947.[6] Debtor argues her additional circumstances are: (1)

---

**5.** This subsection of § 523 was amended February 14, 2007. However, the changes as they relate to this case were in form not substance.

**6.** This list includes: (1) Serious mental or physical disability of the debtor or the debtor's dependents which prevents employment or advancement; (2) The debtor's obligations to care for dependents; (3) Lack of, or severely limited education; (4) Poor quality of education; (5) Lack of usable or marketable job skills; (6) Underemployment; (7) Maximized income potential in the chosen educational field, and no other more lucrative job skills; (8) Limited number of years remaining in [the debtor's] work life to allow payment of the loan; (9) Age or other factors that prevent retraining or relocation as a means for payment of the loan; (10) Lack of assets, whether or not exempt, which could be used to pay the loan; (11) Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; (12) Lack of better financial options elsewhere. *Nys,* 446 F.3d at 947.

she is 48 years old; (2) she has a 6–year–old dependent; (3) nine years have passed since her last student loan; (4) she plans to continue taking classes at Temple College, and if she is able, apply to the nursing program; (5) it is uncertain if and when she will be accepted to a nursing program; (6) the only other skills the debtor has to obtain a job would be in the secretarial or clerical field; (7) she did not have a dependent when she received her student loans; (8) she has a dependent now who is six years old and will be in her care for at least 12 more years at which time she will be sixty years-old; (9) her educational opportunities and earnings potential are limited because of her restrictions to Bell County; (10) her earnings potential are limited because of her age; (11) she does not have assets to pay her loans; and (12) she drives an older model, high mileage car.

ECMC argues that Debtor suffers from nothing more than a garden variety hardship at best, not undue hardship, which is required by statute for discharge of her student loan debts. ECMC asserts that Debtor's reliance on her age and child as additional circumstances is insufficient. ECMC argues that Debtor is healthy and the only reason she is not working is because she had made the choice not to work or even look for work.

TGSLC argues that none of the circumstances that Debtor has pointed to meet the demanding requirements laid out by the Fifth Circuit. TGSLC asserts that the fact that it has been nine years since her last student loan does not bear on her ability to pay her debts in the future. Further, Debtor's argument that she is applying to the nursing program but may never get accepted is without merit because she is two classes away from having an associates degree. Additionally, TGSLC argues that debtor's lack of a college degree, even if one may never be obtained, is not an additional circumstance that meets the second prong. As to Debtor's residency restriction, TGSLC asserts that she could work in larger metropolitan areas outside the county such as Waco, a 45–minute commute, or even Austin, which is also about 45 miles from southern Bell County. TGSLC next argues that Debtor cannot point to her son as an additional circumstance because she does not have a large number of dependents that would prevent her from repaying her student loan debt. Lastly, TGSLC asserts that Debtor's age is not advanced enough to be an additional circumstance and she has not provided proof that her age impedes her ability to earn funds.

 The Fifth Circuit adopted a three-part test for determining if a debtor has met her burden to show an undue hardship:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [herself] and [her] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*United States Dept. of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir.2003) (quoting *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir.1987)). As to the second prong, "additional circumstances" encompass "circumstances that impacted on the debtor's future earning potential but which [were] either not present when the debtor[ ] applied for the loans or [have] since been exacerbated." *Id.* at 92. The *Gerhardt* court stated that the second prong is "meant to be a demanding requirement."

*Id.* Proving that the debtor is "currently in financial straits" is not enough. *Id.* Instead, the debtor must specifically prove "a total incapacity... in the future to pay [her] debts for reasons not within [her] control." *Id.* Some examples of "additional circumstances" include "psychiatric problems, lack of usable job skills, and severely limited education." *Id.* at 92 n. 2.

First, the Bankruptcy Court applied the *Brunner* test as adopted by the Fifth Circuit in *Gerhardt.* The Fifth Circuit in *Gerhardt* applies the *Brunner* test more narrowly than the Ninth Circuit in *Nys.* Other circuits have also applied the *Brunner* test narrowly, requiring such circumstances must be indicative of a "certainty of hopelessness, not merely a present inability to fulfill financial commitment." *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler),* 397 F.3d 382, 386 (6th Cir.2005); *In re Roberson,* 999 F.2d 1132, 1136 (7th Cir.1993); *see also Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour),* 433 F.3d 393, 404 (4th Cir.2005) ("A looser standard would also be unfair to the vast majority of loan recipients who do not attempt to discharge their loans and meet their obligations even with much self-sacrifice.") The Bankruptcy Court is bound to follow the Fifth Circuit *Gerhardt* case. The Court finds that the Bankruptcy Court properly applied the Fifth Circuit standard of review.

Debtor asserts at least twelve additional circumstances that she claims meet the second prong of the test. The Court finds that none of these "additional circumstances" are sufficient to satisfy the Fifth Circuit's demanding requirement of the second prong.

■ First, Debtor asserts that if she is able to, she will apply to the nursing program but it is uncertain if she will ever be accepted to a nursing program. Further, Debtor asserts that the only other skills she has to obtain a job would in the secretarial or clerical field. Debtor's lack of a college degree, even if a college degree or nursing degree is never obtained, does not rise to the level of an additional circumstance necessary to meet the second prong. *See Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful),* 267 F.3d 324, 331 (3d Cir.2001) (holding that 46–year–old mother with one dependent could not show additional circumstances necessary to prove undue hardship, despite the fact that debtor did "not have her college degree and is unlikely ever to attain it"). The *Brightful* court notes that because the debtor did not attain a degree with her student loans, she cannot anticipate significant increased earnings to flow from her education investment in the future. 267 F.3d at 331. Instead, the court noted that she must rely on her existing legal and secretarial skills to fund her expenses and educational debt for the foreseeable future. *Id.* The court stated that this situation is unfortunate, but it does not excuse her from meeting her student loan obligations. *Id.*

■ Second, Debtor asserts that she has a 6–year old dependant who will be in her care for at least 12 more years at which time she will be sixty years old. She also states that she did not have a dependent when she received the loans. Raising one healthy child is not sufficient to meet the additional circumstance requirement of the second prong. *See In re Frushour,* 433 F.3d at 401 (holding that a single forty-six-year-old mother with a seven year old son, where neither the mother nor son had any medical or other similar issues, had not shown additional circumstances necessary to meet the second prong); *In re Oyler,* 397 F.3d at 386 (holding that additional circumstances includes "a large number of dependents"); *Salyer v. Sallie Mae Servicing Corp. (In re Sal-*

*yer)*, 348 B.R. 66, 71 (Bankr.M.D.La.2006) (court did not consider premature triplet dependents an additional circumstance sufficient to meet the second prong).

■ Debtor further asserts that her age should be considered because her earnings potential is limited due to her age. The standard for the second prong is that the additional circumstance exists such that the state of affairs is likely to persist for a significant portion of the repayment period of the student loans. *In re Gerhardt*, 348 F.3d at 91. Although it is not clear from the evidence how much Debtor's payments would be, as it would depend on which plan she selected, it seems clear that her payment plan would not exceed ten years.[7] Thus, Debtor would only be fifty-eight at that time, which is still within Debtor's average working life. Debtor cannot now use her age as grounds to avoid repaying her student loans as she chose to go to school later in life, which resulted in the student loan debts persisting into her later age. *See Educational Credit Mgmt. Corp. v. Waterhouse (In re Waterhouse)*, 333 B.R. 103, 112 (Bankr.W.D.N.C.2005) (holding that the advanced age argument does not satisfy the second prong of *Brunner*). A debtor in her mid-sixties who worked as a mail room clerk and owed $160,000 did not have her student loans discharged because her age did not constitute additional circumstances where she did not have "age-related illnesses that affected her ability to work". *See Educational Credit Mgmt. Corp. v. Spence (In re Spence)*, 341 B.R. 825, 828 (Bankr.E.D.Va.2006). Like the debtor in *Spence*, Debtor has not presented any evidence of any age-related illnesses that prevent her from working at all, let alone another 15–20 years to repay her student loan debts. Debtor cites to

*Grigas v. Sallie Mae Servicing Corp. (In re Grigas)*, 252 B.R. 866 (Bankr.N.H.2000) where the court found that age was a mitigating circumstance for undue hardship. However, in *Grigas*, the court specifically stated that because the debtor was fifty years old and the lender was proposing a 30–year repayment schedule, that schedule far exceeded the debtor's average working life. 252 B.R. at 875. The same situation occurred in the other case cited to by Debtor where the lender proposed a 20–year repayment schedule, and the court found that "[r]equiring someone to repay a student loan under a repayment schedule that far exceeds one's average working life imposes an undue hardship on the debtor." *See Brown v. Union Fin. Serv., Inc. (In re Brown)*, 249 B.R. 525, 528 (Bankr.W.D.Mo. 2000). As noted above, Debtor has not provided any evidence that ECMC or TGSLC are imposing a 20 or 30 year repayment schedule for her that would require her to work beyond her average working life.

■ Next, Debtor asserts that her educational opportunities are restricted to Bell County. However, she lists many excellent educational opportunities in the Bell County area. Debtor also asserts that her earnings potential is limited to the Bell County area. The Court notes that only the Debtor's residency is restricted to Bell County; she is not restricted from working outside of Bell County. In any event, even if Debtor's prospects in the nursing field are foreclosed, there is evidence that she is has earnings potential in the clerical, secretarial, and managerial areas. She has experience in retail and as a long-distance operator and customer service representative for a phone company. She also worked for an airline for about

---

7. Debtor would not be eligible for the extended repayment plan for 25 years because she is not a new borrower on or after 10/7/1998.

nine years where she started as a high level secretary and was promoted to Project Librarian, which was a technical assistant position where she gained "valuable computer experience" and had "more responsibility." Further, she has earned over 140 college credits and is only an algebra class and two physical education classes away from an associates degree in general studies. Debtor's appellate briefs evidence that she is well-educated, and the Bankruptcy Court noted that Debtor showed herself to be educated and well-spoken. Virtually any job would permit Debtor to make some kind of payment on the loans through one of the three types of payment plans [8] while also satisfying her personal needs. The record is devoid of any evidence demonstrating that the Debtor has any health problems or any other problems that impair her ability to work. Further, the record does not demonstrate that she lacks the capacity or skills to work, only that she chooses not to work. Her excuse that she would lose her other benefits is without merit because if she had a job she would not need the benefits, or she may need reduced benefits, because she would have income from the job to pay her rent, utilities, etc., and she could obtain health insurance from her employer. Thus, the record indicates that Debtor has simply failed to diligently pursue employment such that she would be able to alleviate her financial burdens. Additional circumstances "must be beyond the debtor's control, not borne of free choice." *See Fischer v. State Univ. of New York (In re Fischer)*, 23 B.R. 432, 434 (Bankr.W.D.Ky. 1982). The Fifth Circuit has explained, "nothing in the Bankruptcy Code suggests that a debtor may choose to work only in the field in which [she] was trained, obtain a low-paying job, and then claim that it

would be an undue hardship to repay [her] student loans." *In re Gerhardt*, 348 F.3d at 93; *see also In re Oyler*, 397 F.3d at 386 ("Choosing a low-paying job cannot merit undue hardship relief."). The Court finds that it would follow that the Bankruptcy Code also does not suggest that a debtor may choose not to work at all, and then claim that it would be an undue hardship to repay her student loans. *See In re Gerhardt*, 348 F.3d at 93.

■ Lastly, Debtor asserts that she drives an older model, high mileage car. Although this was an additional circumstance of the debtor in *Nys*, the Court finds that this is not an additional circumstance sufficient to meet the second prong in the Fifth Circuit.

Accordingly, the Court finds that the Bankruptcy Court properly applied the correct legal standard for the second prong of the "undue hardship" test, and the Bankruptcy Court properly considered the meaning of "additional circumstances" in the "undue hardship" test. Thus, Debtor has failed to satisfy the second prong and her first issue is overruled.

*2. Issue 2: Whether the trial court erred in finding that the debtor did not make a good faith effort to repay the student loan obligations. Whether the trial court applied the correct legal standard.*

Debtor argues that she is not required to have paid a certain percentage or minimum amount of her loans in order to show good faith. She asserts that she should not be penalized for not having the financial ability to pay the debt. Further, she argues that her failure to make any payment did not prevent the Bankruptcy

---

8. One of the payment plans offered is an income sensitive plan, which is based on the monthly payment amount of the debtor's gross monthly income. It is also states that this plan is limited to five years.

Court from making a finding of good faith when she did not have the resources to make payments. Debtor notes that she made arrangements to consolidate her loans on two different occasions but cancelled the applications because there was no possible way she could start making the required payments. She also states that she spoke with a representative at ECMC about their Income Contingency Repayment Plan (ICRP), but she did not consider this an option because she does not have disposable income to make any payments under this plan. Lastly, Debtor states that she hoped her financial situation would improve but it worsened over the years particularly with her contentious divorce and custody battle with her former husband. She argues that remaining in close contact with her lenders and being honest about her financial situation demonstrates a good faith effort in hopes of repaying her loans, but she had no control over her divorce and custody battle.

ECMC first argues that payment history is an important factor in the good faith analysis, and Debtor has made no payments on any of her student loans. The Bankruptcy Court stated that Debtor provided reasonable explanations for not working since 1999: "marriage, the birth of a child, followed by a lengthy and acrimonious divorce." However, ECMC asserts that Debtor did not make any payments during the two-year period that she was married, her husband was working, and she did not have a child (1999–2000). Further, ECMC states that she has not bothered to look for even part-time employment since the completion of her divorce. Second, ECMC argues that another important factor is the William D. Ford program, which the Bankruptcy Court considered. Debtor stated she did not enroll in the Ford program because she could not start making the required payments, but ECMC asserts that her argument is flawed because she knew her payments would be $0 because her income at that time was below the poverty level. Lastly, ECMC asserts that she may not willfully cause her undue hardship; her condition must result from factors beyond her reasonable control. ECMC argues that she should not be allowed to choose not to work at all and then claim undue hardship.

TGSLC asserts that Debtor failed to maximize her income (constituting lack of good faith) because during the almost three years that she was married, not going to school, and did not have a child, she was not working, but she did not make any payments. Further, TGSLC asserts that Debtor's argument that she has not had the resources to make payments lacks merit because her lack of resources was self-imposed. TGSLC also asserts that Debtor's failure to take advantage of the federal government's ICRP shows a lack of good faith in attempting to repay her loans. TGSLC argues that Debtor's reason that she would not want to burden a future husband with this debt is so speculative that it cannot be a basis for good faith refusal to consolidate her loans.

First, the Bankruptcy Court properly followed the Fifth Circuit standard for the third prong outlined in *Gerhardt*. The Bankruptcy Court stated that Debtor "must show that she had made a good faith effort to repay her debt." *In re Gerhardt*, 348 F.3d at 91, 92 n. 3.

 The third prong recognizes that "with the receipt of a government-guaranteed education, the student assumes an obligation to make a good faith effort to repay those loans, as measured by his or her efforts to obtain employment, maximize income, and minimize expenses." *In re Roberson*, 999 F.2d at 1136. Further, the debtor's hardship must be a result of factors over which she has no control. *In re*

*Frushour*, 433 F.3d at 402. Additionally, the "debtor's effort to seek out loan consolidation options to make the debt less onerous is an important component of the good-faith inquiry." *Id.* This is not always dispositive, but it illustrates that the debtor takes her loan obligations seriously, and is doing her utmost to repay them despite her unfortunate circumstances. *Id.*

 Debtor argues that she is not required to participate in the Income Contingent Repayment Plan ("ICRP"). The Bankruptcy Court correctly concluded that she has no legal obligation to apply to such a program. However, the Bankruptcy Court did recognize that a debtor's effort to pursue options to make a debt less onerous is an important indicator of good faith, such as the Ford program.[9] Debtor did not seriously consider the income contingent plan under the Ford program. While not a *per se* indication of a lack of good faith, her decision not to take advantage of the ICRP is probative of her intent to repay her loans. *See In re Tirch,* 409 F.3d 677, 682 (6th Cir.2005). She was eligible for this plan, and it would have allowed her to pay zero dollars ($0) per month unless her income increased above the poverty level. After twenty-five years, any remaining debt would be discharged. Debtor's reason that she does not have disposable income to make payments under the ICRP lacks merit because at this time she would owe zero dollars ($0). Even when she may start to earn income, TGSLC provided evidence that if she earned $20,000, she would only have to make payments of approximately $105.00 per month.[10] Debtor's argument that she does not want to burden her potential future husband with the consolidated debt should she ever remarry is purely speculative and does not support a good faith refusal to participate in the ICRP.[11] Thus,

---

9. Through the Ford Program, the debtor is eligible for the ICRP. The IRCP

 [p]ermits a student loan debtor to pay twenty percent of the difference between his adjusted gross income and the poverty level for his family size, or the amount the debtor would pay if the debt were repaid in twelve years, whichever is less. Under the program, the borrower's monthly repayment amount is adjusted each year to reflect any changes in these factors. The borrower's repayments may also be adjusted during the year based on special circumstances. See 34 C.F.R. § 685.209(c)(3). At the end of the twenty five year payment period, any remaining loan balance would be cancelled by the Secretary of Education. However, the amount discharged would be considered taxable income.

 *In re Tirch,* 409 F.3d 677, 682 (6th Cir.2005).

10. There is evidence in the record that when she was working for the eleven years before she was married, she averaged about $17,000 per year (her salary ranged from $10,319 to $22,803).

11. Debtor has also argued in her Brief that there would also be a tax consequence at the end of the 25–year period. There is a potential tax liability on any amount of the loan forgiven after 25 years. The ICRP provides, "if a borrower has not repaid a loan in full at the end of the 25–year repayment period ... the Secretary cancels the unpaid portion of the loan." 34 C.F.R. § 685. While the Debtor did not raise the potential tax implications in the Bankruptcy Court, she has now argued that the ICRP is not a viable option at her age and would also cause undue hardship on her dependent because any forgiveness of the remaining debt in 25 years will be a taxable event, imposing a high tax liability when she will likely be on limited income. First, because Debtor did not refer to this potential tax liability as having an impact on her consideration, or lack thereof, of such repayment plans, or as having any effect on her rationale for finding such repayment plans unfeasible, the Court cannot presume that the potential tax implications had a role in her rationale. However, the Court will note that forecasting such tax liability under whatever tax laws will be in effect in 25 years is sheer speculation. *See Educ. Credit Mgmt. Corp. v. Stanley (In re Stanley),* 300 B.R. 813, 818 n. 8 (N.D.Fla. 2003). Further, forecasting the effect any such liability would have on Debtor's actual standard of living at that time would be ever more speculative. *See id.*

the Court finds that Debtor has provided insufficient justifications for refusing to take a simple step that would have allowed her to fulfill her commitments in a manageable way.

Additionally, the Court finds that Debtor has not made a good faith effort to obtain employment and maximize her income to repay her loans. As the Court has noted above, Debtor has usable job skills where she could obtain a job to make payments on her student loans. Debtor has not even attempted to obtain any job in the past nine years. Although she has had a few reasons for not obtaining a job throughout those years, the last order to modify the parent-child relationship in evidence was February 24, 2005; thus, it appears she is at a point now where she could obtain a job. Further, Debtor has no health problems that would limit her ability to obtain a job. There is also evidence in the record that Debtor has worked in the past and attended school at the same time. Debtor made a commitment when she obtained these loans to pay them back. Discharge is not the answer; obtaining employment and paying back the student loans is the priority. *See e.g., O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn)*, 339 F.3d 559, 566 (7th 2003) (noting that "it is not uncommon for individuals to take jobs not to their liking in order to pay off their student loans"); *In re Brightful*, 267 F.3d at 329 n. 4 (stating that debtor has responsibility to pursue other job paths if unable to earn enough at current job); *Pennsylvania Higher Educ. Assistance Agency v. Birrane (In re Birrane)*, 287 B.R. 490, 499 (9th Cir. BAP 2002) (denying discharge because debtor "decline[ed] to obtain additional work" and maximize her income). Congress, in enacting § 523(a)(8), set a high bar for a debtor seeking to discharge government-guaranteed educational loans. To allow Debtor's student loans to be discharged would be unfair to the vast majority of loan recipients who do not attempt to discharge their loans but meet their obligations with much self-sacrifice.

Accordingly, the Court finds that the Bankruptcy Court properly applied the correct legal standard for the third prong, and the Bankruptcy Court properly found that the debtor did not make a good faith effort to repay the student loan obligations. Thus, Debtor has failed to satisfy the third prong and her second issue is overruled.

Having overruled both of Debtor's issues, it is

**ORDERED** that the decision of the Bankruptcy Court is **AFFIRMED IN ALL RESPECTS**. It is further

**ORDERED** that this case is **DISMISSED**. It is further

**ORDERED** that any and all motions or requests not previously ruled upon by the Court are **DENIED** as moot.