

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-2009

# Jessica Coco v. NJ Higher Ed Student

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2965

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Jessica Coco v. NJ Higher Ed Student" (2009). *2009 Decisions.* Paper 1325.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1325

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2965
_____

IN RE: JESSICA ANNA COCO, Debtor

JESSICA ANNA COCO,
                                                    Appellant

v.

NEW JERSEY HIGHER EDUCATION STUDENT ASSISTANCE AUTHORITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2:07-cv-2725)
District Judge:  Honorable Katharine S. Hayden
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 20, 2009

Before: MCKEE, HARDIMAN and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 22, 2009)

_____

OPINION
_____

PER CURIAM

       Appellant Jessica Coco filed for Chapter 7 bankruptcy and, pursuant to an adversary

proceeding, sought to discharge her student loans owed to Appellee New Jersey Higher

Education Student Assistance Authority ("NJHESAA"). After a hearing, the Bankruptcy Court granted summary judgment in favor of NJHESAA, holding that Coco failed to demonstrate that repaying these student loans would impose an "undue hardship" on her, as required by 11 U.S.C. § 523(a)(8). Coco appealed this decision to the District Court, which affirmed. For the reasons that follow, we will vacate the judgment of the District Court and remand with instructions that the Bankruptcy Court vacate the grant of summary judgment.

I.

Coco attended New York University from 1989 to 1992, earning a bachelor of arts degree in history and English literature and an associate's degree in general studies. She financed her education through student loans, with the loans at issue in this case totaling approximately $25,000. She avers that, beginning in 1992 and for several years thereafter, she suffered complications from a severe bout of mononucleosis, including liver damage, non-cancerous leukemia (an abnormally high white blood cell count), hemophilia, significant weight loss, chronic fatigue, and mental fogginess. She states that she ultimately developed Chronic Fatigue Syndrome and a weakened immune system, the latter of which has rendered her susceptible to urinary, kidney, vaginal, stomach, bowel, sinus, and toe infections, as well as frequent bouts of pneumonia, bronchitis, strep throat, and asthma. In 2005, Coco purportedly was diagnosed with osteomyelitis of the mandibular bone, a chronic bone infection in her jaw that is potentially life threatening and has required multiple surgeries.[1] She indicates that she now also suffers from

_____

[1]Much of this medical information is taken from a letter purportedly written by Dr. Raphael Sepson, who according to Coco served as her primary care physician from 1992 to 2005.

Chronic Obstructive Pulmonary Disease, fibromyalgia, arthritis, and metal poisoning.

According to Coco, her chronic medical problems have made it difficult for her to earn a living. Additionally, she states that, from 1994 to 2006, she served as sole caregiver to her elderly, disabled mother, who passed away in 2006. From 1993 to 1997, Coco's reported average yearly income was approximately $1200. She maintains that, during that time, the burdens of her medical conditions and caring for her mother permitted her to work only for very short periods of time. After obtaining a deferment on her student loans on at least one occasion, Coco defaulted in 1997, at which time NJHESAA, the guarantor, repurchased the loans from the lender, Sallie Mae, Inc.

From 1998 to 2005, Coco's reported average yearly income was approximately $10,700. Despite these increased earnings, Coco continued to face financial difficulty, as it appears that her earnings were offset by basic living expenses and high medical costs. In October 2005, Coco filed for Chapter 7 bankruptcy and, pursuant to an adversary hearing, sought to discharge her student loans owed to NJHESAA.[2] At that time, she owed in excess of $70,000, a sum that included the principal, interest, and default penalties. After a hearing in February 2007, the Bankruptcy Court orally granted summary judgment in favor of NJHESAA, holding that Coco failed to demonstrate that repaying these student loans would impose an "undue hardship" on her, as required by 11 U.S.C. § 523(a)(8). The court's ruling turned on Coco's "utter failure" to demonstrate that she had made a good faith effort to repay her loans.

In June 2007, the Bankruptcy Court issued a written order reflecting its grant of summary

---

[2]Coco also had student loans owed to New York University. Those loans are not at issue here.

judgment. Coco appealed this ruling to the District of New Jersey, which affirmed in May 2008. She now appeals the District Court's judgment to this Court.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d). The Bankruptcy Court had original jurisdiction over this case; therefore, "we review the bankruptcy court's findings by the standards the district court should employ, to determine whether the district court erred in its review." Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful), 267 F.3d 324, 327 (3d Cir. 2001) (internal quotations and citation omitted). Accordingly, we exercise plenary review over the Bankruptcy Court's application of the three-pronged undue hardship test to the facts of this case. Id.

III.

Pursuant to 11 U.S.C. § 523(a)(8), student loan debt cannot be discharged in bankruptcy unless repaying this debt would impose an "undue hardship" on the debtor. We, along with the majority of our sister courts, assess whether a debtor faces undue hardship by employing the three-pronged test set forth in Brunner v. N.Y. State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987). See Pa. Higher Educ. Assistance Agency v. Faish (In re Faish), 72 F.3d 298, 306 (3d Cir. 1995) (adopting Brunner test). Under this test, the debtor must establish:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Brunner, 831 F.2d at 396. To prevail, the debtor must establish each prong by a preponderance of the evidence. Brightful, 267 F.3d at 327-28. "Equitable concerns or other extraneous factors

4

not contemplated by the *Brunner* framework may not be imported into the court's analysis to support a finding of dischargeability." Faish, 72 F.3d at 306.

The application of the good faith prong "is to be guided by the understanding that undue hardship encompasses a notion that the debtor may not willfully or negligently cause h[er] own default, but rather h[er] condition must result from factors beyond h[er] reasonable control." Id. at 305 (internal quotations and citation omitted). Although we have not had occasion to apply the good faith prong, other courts have done so by examining the debtor's efforts to "'obtain employment, maximize income, and minimize expenses.'" Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour), 433 F.3d 393, 402 (4th Cir. 2005) (quoting O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn), 339 F.3d 559, 564 (7th Cir. 2003)). Courts have also considered the debtor's efforts to cooperate with the lender, giving weight to a debtor's attempts to seek out a feasible repayment plan. See, e.g., Frushour, 433 F.3d at 402; Educ. Credit Mgmt. Corp. v. Polleys, 356 F.3d 1302, 1312 (10th Cir. 2004).

In granting NJHESAA's motion for summary judgment, the Bankruptcy Court focused on Coco's "utter failure" to satisfy the good faith prong.[3] The court placed "extraordinary significance" on the fact that she had made only one payment – $100 – toward her loan balance. The court also emphasized the fact that Coco had "made no effort to enter into any kind of

---

[3]The Bankruptcy Court only briefly addressed the first two prongs of the undue hardship test. The court seemed to conclude that Coco could satisfy the first prong. As for the second prong, the court stated that Coco's evidence "doesn't do much to meet [this prong]." The District Court interpreted this to mean that Coco "barely" met the second prong. Although this interpretation might be debatable, it does not appear that the Bankruptcy Court's grant of summary judgment rested on a failure to satisfy the second prong.

5

repayment program," noting specifically that she had refused to enroll in the Income Contingent Repayment Plan ("ICRP").[4] The District Court emphasized these same points in affirming the Bankruptcy Court's ruling.

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Fed. R. Bankr. P. 7056 (stating that Fed. R. Civ. P. 56 applies in adversary proceedings before a bankruptcy court). The court reviewing a summary judgment motion "must view the evidence in the light most favorable to the non-movant, drawing all reasonable inferences in favor of the non-moving party." Burtch v. Ganz (In re Mushroom Transp. Co.), 382 F.3d 325, 335 (3d Cir. 2004) (internal quotations and citation omitted). Of course, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (citation omitted). In this case, viewing the proffered evidence in the light most favorable to Coco, we conclude that she has sufficiently demonstrated a good faith effort to repay her student loans to survive summary judgment.

Despite purportedly suffering from several chronic medical conditions and caring for her elderly, disabled mother until her passing, it appears that Coco has made efforts to obtain stable employment. Although she has been mostly unsuccessful in this regard, it seems that her sporadic employment has been due to factors outside her control. She avers that, from 1993 to

---

[4]The Bankruptcy Court referred to this plan as the "Ford program," as the ICRP is part of the William D. Ford Direct Loan Consolidation Program. See 34 C.F.R. § 685.209.

1997, her medical conditions, coupled with the demands of caring for her mother, prevented her from working regularly. Although she was able to obtain part-time employment in 1998, she states that she began to suffer from Chronic Fatigue Syndrome and other medical problems shortly thereafter. She notes that, in 2001, she became too ill to continue to hold this position. When her health improved moderately in 2004, she obtained a position with the U.S. Census Bureau, which apparently permitted her to work a flexible, part-time schedule, enabling her to significantly increase her earnings. According to Coco, when this employer downgraded her employee status from part-time (20 hours per week) to temporary (10 hours per week) in 2006, she obtained a second position to supplement her income. Unfortunately, she was able to hold this second position for only a month, as she could not maintain a consistent work schedule.

The record suggests that, to compensate for her modest earnings, Coco has striven to minimize her expenses. It appears that nearly all of her monthly earnings pay for basic living costs such as rent, food, medical bills, and auto repairs.[5] The closest thing to discretionary spending appears to be the few dollars per month she claims to spend on periodicals and pet food.

It appears that Coco has also attempted to cooperate with NJHESAA in the repayment of her loans. Documents submitted by Coco indicate that she sought and obtained a forbearance on at least three occasions. Additionally, she avers that she inquired about the possibility of paying a portion of her monthly balance, a proposal that NJHESAA allegedly refused, instructing her to

---

[5]In addition to having cared for her mother, Coco states that she has, at times, cared for a friend, Chance Bishop, who allegedly suffers from mandibular cancer. It is unclear from the record as to whether her caring for him has had any meaningful impact on her financially.

7

apply for a deferment until she could pay the balance in full.

The Bankruptcy Court placed too much weight on the fact that Coco has made only one payment toward her loan balance. Her financial situation seemingly has prevented her from setting aside funds for the repayment of her loan. It appears that her earnings, even when at their peak, have been offset by basic living expenses and high medical costs. Indeed, her submitted balance sheets for the years 2005 and 2006 – two of her highest incoming-generating years – suggest that her monthly expenses equaled or exceeded her net earnings. Moreover, as noted above, when she inquired about the possibility of paying only a portion of her monthly balance, NJHESAA allegedly told her that she either had to pay the balance in full or seek deferment until she could do so.

The Bankruptcy Court also placed too much weight on Coco's refusal to enroll in the ICRP. Under this repayment plan, she would be obligated to pay a reduced amount for a period of up to 25 years, after which the unpaid portion of the loan would be discharged. See 34 C.F.R. § 685.209. Importantly, and as Coco emphasizes, because any discharged portion of her loan would be treated as taxable income at the time of the discharge, her participation in the ICRP could ultimately result in her simply trading a student loan debt for an IRS debt. See Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley), 494 F.3d 1320, 1327 (11th Cir. 2007). In light of her purported financial and medical circumstances, which Coco's proffered evidence suggests will continue indefinitely, her decision to forgo enrolling in the ICRP seems reasonable. See Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett), 487 F.3d 353, 365 (6th Cir. 2007); cf. Frushour, 433 F.3d at 403 ("[Debtor's] only reasons for refusing [to enroll in the ICRP] . . . were that it was not suited for her and she wanted a fresh start. It is hard to see why these reasons are

8

not simply shorthand for her lack of interest in repaying her debt.").

This case does not appear to present a situation where a debtor sought to abuse the student loan system or evade repayment. After Coco's loans became due, it appears that she struggled – often below the poverty line – for more than a decade before applying for bankruptcy. Cf. Brunner, 831 F.2d at 397 (declining to find undue hardship where the debtor sought to discharge her student loans within a month after the first payment became due). During that time, it appears she attempted to obtain regular employment and negotiate a feasible repayment plan, all the while coping with chronic medical problems and caring for her ailing mother. Although her efforts to repay her loans have been largely unsuccessful, it appears that this lack of success has been caused by factors outside of her control. Accordingly, we conclude that Coco has made a sufficient showing of good faith to survive summary judgment.

In light of the above, we conclude that the District Court erred in affirming the Bankruptcy Court's grant of summary judgment. We will vacate the judgment of the District Court and remand with instructions that the Bankruptcy Court vacate the order granting summary judgment.