SMITH, Circuit Judge,
concurring.
I concur in the court’s judgment that, applying de novo review, Jesperson is ineligible for an undue hardship discharge of his student loan debt under 11 U.S.C. § 523(a)(8). I write separately to emphasize that whether the debtor enrolled in the Income Contingent Repayment Plan (ICRP) remains merely “a factor” to consider when applying the totality-of-the-circumstances test. In the present case, even assuming that Jesperson’s decision to forgo enrolling in the ICRP was reasonable, other relevant factors, such as “Jes-person’s young age, good health, number of degrees, marketable skills, and lack of substantial obligations to dependents or mental or physical impairments,” supra Part III, establish that Jesperson does not represent the type of debtor experiencing undue hardship that Congress envisioned receiving the benefit of § 523(a)(8).
Section 523(a)(8) states that a debtor’s student loan is not dischargeable “unless excepting such debt from discharge ... would impose an undue hardship on the debtor and the debtor’s dependents.” In evaluating whether a debtor’s student loans would impose an “undue hardship,” we apply the totality-of-the-circumstances test. Long v. Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 553 (8th Cir. 2003). “[F]airness and equity require each undue hardship case to be examined on the unique facts and circumstances that surround the particular bankruptcy.” Id. at 554 (emphasis added). Bankruptcy courts should consider the following when evaluating the totality-of-the-circumstances:
(1) the debtor’s past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor’s and her dependent’s reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case.
Id. (emphasis added).The debtor has the burden of proving undue hardship. Reynolds v. Penn. Higher Educ. Assistance Agency (In re Reynolds), 425 F.3d 526, 529 (8th Cir.2005).
Because the totality-of-the-circumstances test is “very broad,” “courts in the Eighth Circuit have looked to a number of facts and circumstances to assist them in making this determination.” McLaughlin v. U.S. Funds (In re McLaughlin), 359 B.R. 746, 750 (Bankr.W.D.Mo.2007). Such factors include:
(1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) *784 whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness.
Id. (citing VerMaas v. Student Loans of N.D. (In re VerMaas), 302 B.R. 650, 656-57 (Bankr.D.Neb.2003); Morris v. Univ. of Ark. (In re Morris), 277 B.R. 910, 914 (Bankr.W.D.Ark.2002)).
Thus, a “debtor’s good faith effort to lower [his or] her monthly payment by qualifying for an income contingent repayment plan is a factor in the undue hardship analysis.” Cumberworth v. U.S. Dep’t of Educ. (In re Cumberworth), 347 B.R. 652, 661 (8th Cir.BAP2006) (emphasis added). A bankruptcy court should not “plac[e] too much weight on [the debtor’s] refusal to enroll in the ICRP.” Coco v. N.J. Higher Educ. Student Assistance Auth. (In re Coco), No. 08-2965, 2009 WL 1426757, at *4 (3d Cir. May 22, 2009) (unpublished). This is “because any discharged portion of [the debtor’s] loan would be treated as taxable income at the time of the discharge, [meaning that the debtor’s] participation in the ICRP could ultimately result in [the debtor] simply trading a student loan debt for an IRS debt.” Id. Courts have rejected a “per se rule requiring enrollment in the ICRP” to establish a debtor’s good faith effort to repay his or her student loans. Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett), 487 F.3d 353, 364 (6th Cir.2007); see also Tirch v. Penn. Higher Educ. Assistance Agency (In re Tirch), 409 F.3d 677, 682 (6th Cir.2005). As the Sixth Circuit explained:
Congress recently enacted “the most sweeping reform of bankruptcy law since the enactment of the Bankruptcy Code in 1978.” Michael & Phelps, supra, at 77-78; see also Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 (codified in various sections of 11 U.S.C.). Yet Congress left § 523(a)(8)’s “undue hardship” language intact. Had Congress intended participation in the ICRP — implemented in 1994' — to effectively repeal discharge under § 523(a)(8), it could have done so. In addition, requiring enrollment in the ICRP runs counter to the Bankruptcy Code’s aim in providing debtors a “fresh start.” The debtor is encumbered with the debt for an additional twenty-five years, regardless of the length of the student loans. If, at the end of the twenty-five years, the debtor has been unable to repay all the student loans, the remaining debt is canceled and that discharge of indebtedness is treated as taxable income. See Michael & Phelps, supra, at 105. The result, as the bankruptcy court noted, would be that [the debtor] would “be trading one nondis-chargeable debt for another.”
Barrett, 487 F.3d at 364.
But if a debtor merely refuses to enroll in the ICRP because he or she wants a “fresh start,” indicating that the debtor has a “lack of interest in repaying [his or] her debt,” then such factor certainly weighs in favor of not discharging the debt. Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour), 433 F.3d 393, 403 (4th Cir.2005).
In the present case, considering the totality of the circumstances, one of which is participation in the ICRP, Jesperson exemplifies the type of debtor who is not eligible for a discharge of his student loan debt under § 523(a)(8). Jesperson (1) is well-educated, (2) is skilled in a specific profession (the law), (3) is young, (4) is in good health, (5) suffers from no physical or mental impairments at the present time, *785 (6) is unmarried, (7) has the capacity to work, and (8) has made no payments toward his student loan debt, indicating a lack of interest in repaying his debt via the ICRP or otherwise. Jesperson’s current situation seems to be the result of his own self-imposed limitations, evidenced by his routinely quitting jobs after a short period of time. Such a “patent lack of ambition, cooperation and commitment,” Jesperson v. U.S. Dep’t of Educ. (In re Jesperson), 366 B.R. 908, 911 (Bankr.D.Minn.2007), does not support a finding of discharge-ability under § 623(a)(8). See, e.g., Spence v. Educ. Credit Mgmt. Corp. (In re Spence), 541 F.3d 538, 545 (4th Cir.2008) (holding that debtor did not make a good faith effort to maximize her income, meaning that she did not satisfy the third factor of the Brunner undue hardship test for the dischargeability of student loan debt, where, although debtor was highly educated, she appeared to be satisfied working for a company as a mail services specialist, debtor had not made efforts to pursue a more lucrative line of work and admitted that she was not currently pursing other work at all, debtor did not fully explore the possibility of loan consolidation programs that offered reduced payments based upon a debtor’s limited income, and, while debtor made efforts to obtain available deferments and forbearances, after they expired she immediately filed for bankruptcy and had not made one payment on any of the loans held by student loan creditor); U.S. Dep’t of Educ. v. Gerhardt (In re Gerhardt), 348 F.3d 89, 93 (5th Cir.2003) (holding that “nothing in the Bankruptcy Code suggests that a debtor may choose to work only in the field in which he was trained, obtain a low-paying job, and then claim that it would be an undue hardship to repay his student loans”); Goulet v. Educ. Credit Mgmt. Corp., 284 F.3d 773, 779 (7th Cir.2002) (“As the bankruptcy court noted, Goulet is an intelligent man. The record does not reveal that he lacks usable job skills or that he is hindered by a limited education. In fact, because of the loans, he received an excellent education. The natural conclusion, when considering his exemplary educational record and nearly-completed graduate work, is that Goulet can apply himself when he desires to do so. The record does not demonstrate that he lacks the capacity to work, only that he does not seem anxious to do so.”); Loftus v. Sallie Mae Servicing (In re Loftus), 371 B.R. 402, 410-11 (Bankr.N.D.Iowa 2007) (“Several factors weigh against the discharge of Timothy’s student loan obligations. He is young and in relatively good health. He has two graduate degrees in communications and education. He has acquired marketable knowledge and skills in the areas of communications and computer technology. Timothy’s decision to live in a small town in northwest Iowa has been a self-imposed geographical limitation on his employment options. In recent years he has restricted his job search further by making very few applications and by applying for positions only at colleges and universities in the area. Timothy has not made his best effort to maximize income and reduce expenses.... Timothy argues that his student loan debt should be discharged because the total amount owed is more than $300,000. However, the size of the debt is a function of the large amount of money he borrowed' — about $138,000 to attend graduate school — and the many years the loans have accrued interest and gone without payment. It appears that Timothy has never taken responsibility for the debt.”); Burton v. Penn. Higher Educ. Assistance Agency (In re Burton), 117 B.R. 167, 170 (Bankr.W.D.Pa.1990) (“Debt- or presently is unemployed. However, his education and skills are such that Debtor reasonably can be expected in the foreseeable future to repay his student loans *786 while living above the subsistence level. Debtor appears to be a talented artist with marketable skills. In addition, he has completed at least four (4) years of college and is obviously intelligent. Debtor unquestionably has the skills and training sufficient to enable him to find decent employment.”).
Accordingly, based on the totality of the circumstances, I concur in the court’s reversal of the judgment of the district court and its remand with directions to enter an order declaring that Jesperson’s student loan debts to ECMC are not discharged.